458 So.2d 1011 (1984)
Raynor JUNEAU and Janice Juneau, Individually and on Behalf of Their Minor Child, Rushing Juneau, Plaintiffs-Appellees,
v.
The HARTFORD INSURANCE COMPANY, et al., Defendants-Appellants.
No. 83-1048.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
Writ Denied December 14, 1984.
*1012 H.B. Gist, Jr., and Charles Lacroix, Alexandria, for defendants-appellants.
David Townsend, Bunkie, for plaintiffs-appellees.
Frederick B. Alexius, Alexandria, for defendants-appellees.
Before GUIDRY, CUTRER and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiffs, Raynor and Janice Juneau, individually and on behalf of their minor son, Rushing Jon Juneau, appeal a ruling maintaining an exception of prescription in a medical malpractice suit. Appellants sued Dr. Judith Buckley, a radiologist, Dr. Carl Jory, a general practitioner, and St. Francis *1013 Cabrini Hospital of Alexandria, for damages resulting from medical malpractice, arising out of the premature birth by Caesarean section of the baby Rushing Juneau on January 8, 1981. Jory and Cabrini filed exceptions of liberative prescription of one year, and the trial court maintained the exceptions, dismissing the suits against them. We affirm.
The prescription facts are not disputed, only the law applicable to those facts. Janice Juneau became pregnant in 1980. Her doctor, Carl Jory, thinking she might be due earlier than first thought, sent his patient to Cabrini Hospital where a sonogram test was made on January 6, 1981. This test, designed to determine the age of the fetus, was administered by hospital personnel, interpreted by Dr. Buckley, and acted upon by Dr. Jory, who took the baby by Caesarean section on January 8, because the test result indicated the baby was full term and ready to be born.
The baby boy was premature. He had resulting serious respiratory problems, and was a patient in the neonatal intensive care unit of Cabrini from the date of his birth until April 10, 1981.
These events were the basis of the later filed malpractice claims and suits. It was a factual finding of the trial court, not contested on appeal, that the Juneaus knew of the alleged malpractice by the time the baby was released from the hospital on April 10, 1981, and that this date started the running of prescription.
On January 7, 1982, the Juneaus filed a complaint under the Medical Malpractice Act, LSA-R.S. 40:1299.41-48, with the commissioner of insurance requesting a medical review panel to review the actions of the two doctors and the hospital. By letter dated four days later, January 11, 1982, the commissioner advised the Juneaus' attorney that Jory and Cabrini were not "qualified" under the act, but that Buckley was, and that a medical review panel was being formed to review her actions. This panel was formed on May 31, 1982, and reached its decision on September 29, 1982.
A suit against Buckley was filed on December 10, 1982. It was not until July 6, 1983, that plaintiffs filed suit against Jory and Cabrini, which was done by amending petition alleging these two defendants were solidary obligors with Buckley.
The suit against Buckley was timely filed under the provisions of the Medical Malpractice Act, R.S. 40:1299.47(A)(2), as amended by Act 791 of 1981, and nobody questions the timeliness of that suit. What is at issue is the timeliness of the addition of Jory and Cabrini, who were not subject to the Louisiana Malpractice Act, and who were not sued until more than one year had passed since prescription began to run.
On these facts the Juneaus contend that the trial judge was wrong in finding that their suit against Jory and Cabrini had prescribed. Appellants argue that their amending suit naming these defendants as joint tort-feasors liable in solido places the case squarely under La.Civil Code art. 2097, which says:
"A suit brought against one of the debtors in solido interrupts prescription with regard to all."
Thus, appellants rest on the simple argument that, their suit against Buckley having been timely filed, there was an interruption of prescription as to the other solidary obligors.
The trial judge held that the suit against Buckley did not save the others from prescription. He reasoned that this suit could not have had the effect of interrupting prescription that had already run on the claim against Jory and Cabrini, because prescription, once accrued, cannot be interrupted.
We agree with the trial court. The prescription applicable in medical malpractice cases is provided by LSA-R.S. 9:5628(A), as follows:
"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one *1014 year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect."
Prescription began to run against Jory and Cabrini on April 10, 1981, the date of discovery of the alleged malpractice. One year later, April 10, 1982, prescription had accrued, unless something happened in the meantime to suspend or interrupt the running of it.
Two things happened during that year: On January 7, 1982, plaintiffs filed a claim against both doctors and the hospital asking for a medical review; and on January 11, 1982, plaintiffs were notified that Jory and Cabrini were not "qualified." Neither of these events suspended or interrupted the accrual of prescription in favor of Jory and Cabrini.
The same prescription, of course, began to run on April 10, 1981, on the alleged malpractice of Dr. Buckley, but she was "qualified" under the Medical Malpractice Act; hence, under the Act, the running of prescription was suspended in her case until 90 days after an opinion was rendered by the medical review panel (September 29, 1982). R.S. 40:1299.47(A). The suit against her was filed within that 90 days.
The Medical Malpractice Act provisions in effect at the time of the alleged act of malpractice in the instant case, did not provide for the suspension of the prescription for "non-qualified" health care providers. In fact, the law expressly declared and the courts recognized that a patient's remedy against a "non-qualified" health care provider would not be affected by the terms and provisions of the Medical Malpractice Act. R.S. 40:1299.41(D). Ferguson v. Lankford, 374 So.2d 1205 (La.1979); Everett v. Goldman, 359 So.2d 1256 (La. 1978). Thus, the Act did not suspend the running of prescription as to Jory and Cabrini.
The Medical Malpractice Law was amended by Acts 791 and 792 of 1981 to provide, in certain cases, for periods of suspension of prescription on claims against "non-qualified" health care providers. However, Act 791 also amended R.S. 40:1299.41(F) to read:
"F. The provisions of this Part do not apply to any act of malpractice which occurred before September 1, 1975. The provisions of this Part that provide for the suspension and the running of prescription with respect to a health care provider who has not qualified under this Part, but against whom a claim has been filed under this Part, do not apply to any act of malpractice which occurred before September 1, 1981."
Since the alleged act of malpractice occurred before September 1, 1981, and a claim was filed against both Jory and Cabrini, both "non-qualified" health care providers, under the provisions of the Act, the new suspension provisions do not apply to them. Even if these amendments should be deemed applicable, the period of suspension allowed would not have saved the claims from prescription, as prescription, in any event, would have run months before the suits against Jory and Cabrini were filed.
Appellants' argument that the timely suit against Dr. Buckley interrupted prescription with regard to her solidary obligors, is answered by the following language from Ferguson v. Lankford, supra, at p. 1208:
"It would seem to follow logically that, since `[e]very act, which interrupts prescription with regard to one of the creditors in solido avails the other creditor [creditors]', every interruption with regard to one of the solidary debtors would avail the creditor. The code does not so provide, nor does our jurisprudence. Suit against one debtor bound in solido will interrupt prescription as to the others (as will an acknowledgment). C.C. 2097; R.S. 9:5801. But if one of the acts, *1015 described in code or statutes as interrupting prescription running in favor of a debtor, does not occur, there is no interruption. Here there was no suit, in any court, and no acknowledgment."
The court added:
"In order now to say that a claim, timely filed against health care providers, one `qualified' and one not `qualified,' interrupts prescription running in favor of both, it would be necessary to hold that a proceeding under the Medical Malpractice Act is equivalent to a suit. It is not.
"Suit against one solidary obligor will interrupt prescription as to all; filing a claim under the Medical Malpractice Act will not interrupt prescription against solidary obligors who are not `qualified' under the act."
That feature of the Medical Malpractice Act addressed in the above two paragraphs has not been changed since Ferguson v. Lankford. Filing a claim under the act will not interrupt prescription against solidary obligors who are not "qualified" under the act. Nothing happened to interrupt prescription before it accrued in favor of Jory and Cabrini. When prescription accrued, the civil obligation was extinguished (Civil Code art. 1758(3)). There was nothing left to interrupt by the later filing of the suit against Dr. Buckley.
The judgment of the trial court dismissing plaintiffs' demands against Dr. Carl Jory and St. Francis Cabrini Hospital is affirmed, appellants to pay the costs of this appeal.
AFFIRMED.