503 So.2d 709 (1987)
Debra FONTENOT, Plaintiff-Appellant,
v.
OPELOUSAS GENERAL HOSPITAL, et al., Defendants-Appellees.
No. 86-309.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Writ Denied April 23, 1987.
*710 C. Brent Coreil, Ville Platte, for plaintiff-appellant.
Alex L. Andrus, III, Opelousas, for defendants-appellees.
Before GUIDRY, STOKER and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff-appellant, Debra Fontenot, appeals a judgment of the district court sustaining an exception of prescription filed on behalf of defendant-appellee, Dr. Frank Biba. We annul and set aside that judgment and remand to the district court for further proceedings.
In the medical malpractice suit filed by Mrs. Fontenot, she claims that Opelousas General Hospital and Dr. Frank Biba are solidarily liable for injury and damages she allegedly sustained while hospitalized in May 1983. Dr. Biba excepted to the suit, maintaining that any claim against him had prescribed. On December 27, 1985, at the hearing on the exception, the following facts were stipulated to by counsel for the parties:
1. On May 2, 1983, the alleged substandard care was rendered by Dr. Frank Biba to plaintiff, Debra Fontenot.
2. On April 25, 1984, plaintiff became aware of the alleged cause of her injuries.
3. On July 3, 1984, Mrs. Fontenot filed a petition with the Commissioner of Insurance of the State of Louisiana alleging the same facts as in the present suit against Opelousas General Hospital and Dr. Frank Biba.
4. On July 9, 1984, the petition was received by the office of the Commissioner of Insurance.
5. On July 12, 1984, the State of Louisiana's Commissioner of Insurance sent a certified letter to attorney for the appellant informing him that Dr. Frank J. Biba was not qualified to be entitled to the provisions of La.R.S. 40:1299.41 et seq. at the time of the alleged malpractice.
6. On July 16, 1984, the attorney for plaintiff, Mrs. Fontenot, received the said letter.
7. At the time of the alleged malpractice, Dr. Frank J. Biba was not a qualified health care provider within the provisions of La.R.S. 40:1299.41 et seq.
8. On September 6, 1985, the present lawsuit was filed in the 27th Judicial District Court, St. Landry Parish, Louisiana, against Dr. Frank J. Biba and Opelousas General Hospital.
It is undisputed that, at the time of the alleged malpractice, Opelousas General Hospital was a qualified health care provider within the purview of La.R.S. 40:1299.41 et seq.
The only issue currently before us in this case is whether plaintiff's claim against defendant, Dr. Biba, for medical malpractice has prescribed. The trial judge, in ruling that the claim had prescribed, relied upon a case decided by this court in 1984, Juneau v. Hartford Ins. Co., 458 So.2d 1011 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 198 (La.1984), and Juneau's interpretation of the law in effect at that time. The portions of the law germane to the case and discussed herein have not changed since Juneau.
Recently, in Doyle v. St. Patrick Hospital, 499 So.2d 704 (La.App. 3rd Cir.1986), a panel of this court recognized as erroneous and rejected some of the conclusions reached in Juneau. Rather than analyze Doyle and compare it to Juneau, we have elected to attempt to clarify the troublesome area of the law involved in all three cases.
Basically, Louisiana law recognizes two potential classes of medical malpractice defendants: (1) those who are "qualified" health care providers under the provisions of La.R.S. 40:1299.41 et seq.; and, (2) those who are not so "qualified". Where there is but one defendant, or but one class of defendants, in a suit, there is no problem applying the law.
First, one looks to La.R.S. 9:5628, which states:
"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed *711 under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts."
If a claim has apparently prescribed under the terms of this statute, one next looks to the medical malpractice statute to try and determine if the prescription declared by La.R.S. 9:5628 has been suspended by any intervening event.
La.R.S. 40:1299.41(D) provides:
"D. A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part."
La.R.S. 40:1299.41(G) provides:
"G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended for a period of ninety days after a panel is formed under the provisions of this Part, provided a claim is made against the in solido obligor either under the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen."
La.R.S. 40:1299.47(A)(1) and (2)(a) provide:
"A. (1) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the commissioner that the health care provider is not covered by this Part."
Thus, in the case where there is but one "qualified" defendant, or a number of all qualified defendants and a timely request has been made for the convening of a medical review panel, prescription against the defendant(s), which otherwise would have run, does not expire until 90 days following notification by certified mail to the claimant (plaintiff) or his/her attorney of the issuance of the opinion of the medical review panel. (See La.R.S. 40:1299.47(A)(2)(a)).
In the case where there is a single or there are multiple non-qualified defendants and no review panel has been requested as to any defendant, La.R.S. 40:1299.41(D) tells us that there is no suspension of prescription. However, where a medical review *712 panel has been timely sought, even though no defendant is qualified, one must refer to the provisions of La.R.S. 40:1299.47(A)(2)(a). That portion of the statute declares that, in the latter case, prescription, which otherwise would have run, does not expire until 60 days following notification by certified mail to the claimant or his/her attorney by the commissioner that the health care provider(s) is/are not covered by La.R.S. 40:1299.41 et seq.
The third case, the most common to be litigated on the question of prescription up to this time, the most troublesome and the situation presented in the case sub judice, is the circumstance where one or more defendants are qualified and are liable "in solido" with one or more defendants who are not qualified.
Before the 1981 amendments to the Medical Malpractice Act, the courts of Louisiana held that the act did not provide for the interruption or suspension of prescription against a non-qualified health care provider even though such provider was alleged to be liable in solido with a qualified provider. Ferguson v. Lankford, 374 So.2d 1205 (La.1979); Dupont v. Doctor's Hospital, 369 So.2d 1092 (La.App. 1st Cir. 1979), writs refused, 371 So.2d 834 (La. 1979).
However, the 1981 amendments legislatively overruled Ferguson and Dupont and their progeny by providing for suspension of prescription against non-qualified providers who are solidarily liable with at least one qualified health care provider. La.R.S. 40:1299.41(G) establishes the suspensive period as 90 days after a review panel is formed under the provisions of the Medical Malpractice Act. Thus, in this procedurally more difficult situation, the qualified provider is still afforded the protection of a review panel and the plaintiff is given more time to perfect his claim against the non-qualified provider. Section "G" defines the formation of the panel as that date on which the third member of the panel is chosen.
Thus, in the present case, prescription did not run 60 days after notification that Dr. Biba was not a qualified health care provider, but rather 90 days after the last member of the panel was chosen. Since the record contains no evidence as to the date when the third health care provider member of the panel was chosen to consider plaintiff's claim against Opelousas General Hospital, we have no choice but to remand the case for such a determination.
Accordingly, for the reasons stated, we annul and set aside the judgment appealed from and remand the case for further proceedings consistent with this opinion. All appellate costs are assessed against defendant-appellee. Assessment of costs at the trial level are to await a final determination of this matter.
REVERSED AND REMANDED.