612 So.2d 1031 (1993)
GULF STATES LAND & DEVELOPMENT INC., et al., Plaintiff-Appellant,
v.
The OUACHITA NATIONAL BANK IN MONROE, Defendant-Appellee.
The OUACHITA NATIONAL BANK IN MONROE, Plaintiff-Appellee,
v.
GULF STATES LAND & DEVELOPMENT, INC., et al., Defendant-Appellant.
Nos. 24293-CA to 24295-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Rehearing Denied February 18, 1993.
*1032 Theus, Grisham, Davis & Leigh, by J. Michael Hart, Monroe, for Gulf States Land & Development, Inc., et al.
Blackwell, Chambliss, Hobby & Henry, by Sam O. Henry, IV, West Monroe, for A.W. Hood, Jr.
Winstead Sechrest & Minick, by Jeff Joyce and W. Mike Baggett, Houston, TX, and Shotwell, Brown & Sperry, by George M. Wear, Jr., Monroe, for Premier Bank, N.A., amicus curiae.
Before MARVIN, C.J., and NORRIS and LINDSAY, JJ.
MARVIN, Chief Judge.
In this action that was initially instituted in 1988 for damages allegedly caused by a breach of a 1986 commercial loan agreement by the defendant bank, the appeal is from a 1992 judgment sustaining an exception of one-year liberative prescription directed at a 1991 amended petition that alleged that a bank officer extorted one of the individual borrowers into signing the loan agreement by threatening to publicize embarrassing information from that borrower's past that the bank solicited from private detectives who were hired in 1985 while the loan agreement was being negotiated.
The 1991 amended petition joined as defendants, the bank, the bank officer-alleged extortioner, Hood, as well as the bank's attorney and two private detectives. Hood filed the exception of prescription.
The plaintiff-borrowers argue on appeal that prescription was interrupted, either by contra non valentem or by their timely filing of the extortion claim against the other defendants who allegedly conspired with and were solidary obligors with defendant Hood. Alternatively, plaintiffs argue that the claim is either imprescriptible or is subject to the five-year prescription because the extortion rendered the loan agreement an absolute or a relative nullity. C.C. Art. 2032.
Plaintiffs contend the doctrine of contra non valentem was applicable until they obtained in 1990 documentary evidence of *1033 the bank's involvement in soliciting and advancing payment for the damaging report on the extortion victim. Before that time, plaintiffs say, they "had no other facts upon which to make a claim of extortion other than [the victim's] word versus Mr. Hood's [word]."
Assuming for purposes of the exception that the extortion allegations were true, the trial court found that the extortion victim, Palowsky, knew in 1985 that he was being extorted by Hood and had, at that time, sufficient facts to bring suit, notwithstanding that "it may have been a `one-person's-word-against-another-person's-word' suit." The trial court concluded that contra non valentem did not interrupt the one-year prescriptive period before the corroborating evidence of the extortion was discovered.
We affirm.

FACTS
The March 1991 supplemental and amending petition asserting the extortion claim is not in the record of this appeal, that petition having been filed while an earlier appeal of a summary judgment on the bank notes executed by plaintiffs was pending. Ouachita Nat. v. Gulf States Land & Dev., 579 So.2d 1115 (La.App. 2d Cir.1991), writ denied. Hood's prescription exception was argued in the trial court in December 1991, apparently without the taking of evidence. The facts giving rise to the exception are, for the most part, undisputed by the litigants, at least for purposes of the exception. We summarize the facts as gleaned from this record, from the appellate briefs and from our opinion in the prior appeal.
Palowsky was one of several individuals who borrowed $2.8 million from Ouachita National Bank (now Premier Bank) to buy a tract of land north of Monroe and develop it as North Pointe Subdivision. Palowsky and the other borrowers bought the land individually and later incorporated as Gulf States Land and Development, Inc. We shall refer to the borrowers collectively as "Gulf States."
In March 1988, Gulf States stopped making payments on the loan and filed suit alleging that the bank had breached the loan agreement. Gulf States filed several supplemental and amending petitions, including one in August 1990 to add Mr. Hood and other bank officers as defendants on the breach of contract claim, and another in March 1991, seeking damages for Hood's alleged extortion of Palowsky.
The Bank brought two suits against Gulf States in 1988, the first to collect promissory notes for advances made under the loan agreement and to have the bank's mortgage on the subdivision property recognized, and the second for a declaratory judgment that Gulf States had breached the loan agreement. These suits were consolidated with the Gulf States suit against the bank.
The extortion claim involves a damaging report about Palowsky that was prepared by a private investigator, Maurice Pearson, in 1985, ostensibly at the request of Dr. Lee Roy Joyner. Dr. Joyner and Palowsky jointly owned some investment property, including the North Pointe tract involved in the 1986 loan agreement. Dr. Joyner apparently was heavily indebted to the bank and desired to separate his investments from Palowsky's. As part of the 1986 transaction with the bank, Dr. Joyner sold his interest in the North Pointe tract to Palowsky and the other Gulf States principals, who then obtained the loan agreement to finance development.
Palowsky alleged that Pearson's report was actually sought by the bank's president, Vanderpool, who told Hood, the loan officer negotiating with the Gulf States principals, to get a report on Palowsky and use it to force him to borrow money to develop the North Pointe Subdivision. Palowsky alleged that Hood told Dr. Joyner to order a report on Palowsky in the fall of 1985, which he did, in return for the bank's agreement to make a $25,000 loan to Dr. Joyner. Palowsky alleged that Pearson was paid $8,000 for his report by another loan that the bank made, through Hood, to the bank's closing attorney, Donald Kneipp, and that this loan was later repaid *1034 from the proceeds of the loan to Dr. Joyner by the bank.
Kneipp represented Dr. Joyner's wife, Nancy, in divorce proceedings until "late 1990," when she ended their attorney-client relationship and obtained her file from Kneipp. The file contained documentation of how Pearson's report on Palowsky was obtained and paid for. It also contained a note by Kneipp indicating that Hood told him that "it was Stanley's [Palowsky's] responsibility to get Lee Roy [Dr. Joyner] out of debt." Mrs. Joyner furnished this documentation to Palowsky, provoking the extortion claim by Gulf States against the bank, Hood, Kneipp, Pearson and Pearson's assistant, John Lang. The extortion claim was filed on March 6, 1991, within a year of Mrs. Joyner's receipt of her file from Kneipp.

HOOD'S PRESCRIPTION EXCEPTION
Hood and the other defendants filed various exceptions to the extortion claim. Only Hood's exception of prescription is involved in this appeal. Hood argued that the extortion claim was a tort claim subject to a one-year prescriptive period that began in 1985, when the alleged extortion occurred, or at the latest in October 1986, when Palowsky signed the loan agreement. The extortion claim was not mentioned in Gulf States' original suit for breach of the loan agreement, filed in March 1988, or in any of its amending petitions, including the August 1990 petition adding Hood as a defendant, until the fourth amending petition was filed March 6, 1991.
Gulf States claimed prescription did not begin to run until late 1990, when they obtained "facts sufficient to entitle them to bring suit" from Mrs. Joyner's file, citing language from National Union Fire Ins. Co. v. Spillars, 552 So.2d 627 (La.App. 2d Cir.1989), writ denied, wherein we said:
The jurisprudence recognizes the doctrine of contra non valentem, whereby prescription does not begin to run on a cause of action that was not known or reasonably knowable to the plaintiff. Constructive knowledge sufficient to start the running of prescription requires more than mere apprehension that something might be wrong. Prescription does not run against a person who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not wilful, negligent or unreasonable. Prescription does not run if the cause of action has not established itself with sufficient certainty to be susceptible of proof in a court of justice, or if the defendant has concealed information or misled and lulled the plaintiff into inaction.
552 So.2d at 630; citations omitted. Emphasis in original.
Spillars (noted in the opinion to be a misspelling of Spillers) involved a claim by an insurer, National Union, to recover from the alleged tortfeasors the proceeds it paid on a policy against embezzlement. Spillers was a former employee of the insured, Howard Brothers Discount, and was in charge of maintaining Howard's fleet of tractor-trailer rigs. Spillers had authority to buy parts and labor on Howard's account. Spillers and Hodge, a parts supplier, schemed to charge Howard for parts that Spillers used for his personal vehicles. The embezzlement was not discoverable by a mere inspection of Howard's books, in which Spillers made entries that concealed the scheme.
In November 1984, Howard received an anonymous phone tip, the contents of which were not disclosed at trial, that triggered an internal investigation of its books. Howard discovered some "suspicious invoices" and suspected that either or both Spillers and another employee, Brock, were paying fraudulent invoices but did not learn which, if any, invoices were fraudulent, or that Spillers was in fact involved in the embezzlement, and Brock was not, until Spillers and Hodge gave statements to the sheriff on February 26, 1985.
National Union filed suit on February 24, 1986. Spillers and Hodge argued that the suit was barred by prescription. We affirmed the trial court's overruling of the prescription exception:
... [National Union] discovered facts sufficient to entitle it to bring suit only *1035 on February 26, 1985, after questioning Hodge and Spillers and receiving their statements. Prior to this time, plaintiff had mere suspicions. The attempt to uncover hard facts was frustrated and foiled by Spillers's fraud, so the failure to uncover these facts was not wilful or negligent on the plaintiff's part but was rather a direct result of fraud and concealment on Spillers's part. The instant action, filed February 24, 1986, was timely.
552 So.2d at 631. Emphasis in original.
The trial court here found Spillars to be factually distinguishable because the tort victim there suspected, but did not know, that funds were being misappropriated and that Spillers was the culprit until Spillers and Hodge gave their statements to the sheriff, while Palowsky "had more than `mere suspicions' that he was being extortedhe knew of the extortion [in 1985]....
To be extorted, one must know he is being extorted." The court found that Gulf States "should have filed suit within one year of the act ... [e]ven though it may have been a `one-person's-word-against-another-person's-word' suit."

DISCUSSION
Gulf States acknowledges that Palowsky knew in 1985 that he was being extorted by Hood, but claims that prescription did not then begin to run because "there were no other facts or evidence upon which Mr. Palowsky could have made a claim for extortion [before late 1990 and] it would simply have been a swearing match between Mr. Palowsky and Mr. Hood with no other documentation." Our emphasis.
The essence of Gulf States' argument is that prescription against Hood was interrupted until Gulf States obtained sufficient evidence to prove its claim, notwithstanding that Palowsky immediately knew the facts giving rise to the claim (that Hood threatened to reveal damaging information about him unless he entered into the loan agreement). This argument is not legally sound.
Prescription begins to run when a cause of action is known or reasonably knowable to the plaintiff. Spillars, supra. Prescription is not interrupted until the plaintiff can obtain sufficient evidence to prove the claim or to corroborate the plaintiff's account of the tort. See and compare Richards v. LaCour, 515 So.2d 813 (La. App. 3d Cir.1987), writ denied; McNary v. Sidak, 478 So.2d 712 (La.App. 3d Cir.1985); Sinclair v. Sullivan, 447 So.2d 36 (La.App. 1st Cir.1984); and Brown v. Clingman, 16 So. 564 (La.1895).
Palowsky knew or should have known that he had a cause of action against Hood for extortion when he signed the agreement that Hood allegedly extorted him to sign. Gulf States has not argued or shown that Hood threatened Palowsky with further harm if he took legal action against Hood. Gulf States nevertheless argues that it should be excused from having to file suit within a year of the signing of the agreement because the damaging information with which Hood threatened Palowsky was false and Palowsky did not want it disclosed. From these facts, Gulf States argues that the tort itself induced in Palowsky a "mental incapacity" that effectively prevented him from availing himself of his cause of action.
Palowsky's reluctance to bring suit because of the potential for embarrassment or public disclosure of the information used to extort him does not rise to the level of mental incapacity that will excuse a plaintiff from timely filing suit. See and compare Bock v. Harmon, 526 So.2d 292 (La. App. 3d Cir.1988), writ denied. See also Strata v. Patin, 545 So.2d 1180 (La.App. 4th Cir.1989), writ denied.
Palowsky knew he had a cause of action against Hood for extortion when he signed the loan agreement in 1986. Gulf States has not shown any grounds for delaying the running of prescription against Hood. The claim against Hood prescribed in 1987, long before he and his alleged co-conspirators were sued for extortion in 1991.
Even if Gulf States' claim against the other defendants allegedly involved in the extortion is timely based on contra *1036 non valentem, an issue that we need not and do not decide here, the claim against Hood, having already prescribed when the other defendants were sued, was not revived by a "timely" suit against Hood's alleged co-conspirators and solidary obligors. Noggarath v. Fisher, 557 So.2d 1036 (La.App. 4th Cir.1990); Whitnell v. Menville, 540 So.2d 304 (La.1989); Juneau v. Hartford Ins. Co., 458 So.2d 1011 (La.App. 3d Cir.1984), writ denied. See also Bustamento v. Tucker, 607 So.2d 532 (La. 1992), fn. 5 at p. 536.
Gulf States contends that no prescriptive period applies to the extortion claim against Hood because a contract obtained by extortion is absolutely null and the action to annul such a contract is imprescriptible under C.C. Art. 2032. Alternatively, Gulf States argues the loan agreement was a relative nullity, subject to the five-year prescription under Art. 2032.
Gulf States does not seek to annul or set aside the loan agreement, but seeks to enforce the agreement and to recover damages for the bank's alleged breach of the agreement and for Hood's alleged extortion. Under these circumstances, the provisions for prescription of claims to annul a contract simply should not be applied to the demand for damages arising out of the alleged extortion.

DECREE
At the cost of Gulf States, the judgment is AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, VICTORY and WILLIAMS, JJ.
Rehearing denied.