740 So.2d 775 (1999)
Christopher L. SOUTHERN, et al., Plaintiffs-Appellants,
v.
BANK ONE OF LOUISIANA, N.A., et al., Defendants-Appellees.
No. 32,105-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*776 Sedric E. Banks, Monroe, Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, Counsel for Appellants.
Taylor, Porter, Brooks & Phillips by Harry J. Philips, Jr., Robert W. Barton, Baton Rouge, Shotwell, Brown & Sperry by George W. Wear, Jr., Monroe, Counsel for Appellee-Bank One of Louisiana.
Joe D. Guerriero, Monroe, Counsel for Third Party Defendant, Kay W. Southern.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The plaintiffs, Brent Southern, Susan Southern, Chris Southern, and Amy Southern, appeal from a trial court judgment granting an exception of prescription in favor of the defendants, Bank One of Louisiana, and certain individuals formerly associated with Bank One, finding that the plaintiffs' claims alleging improprieties in the administration of their trust funds and managing agency agreements, have prescribed. For the following reasons, we affirm.

FACTS
The plaintiffs are the children of Dr. M. Eugene Southern (now deceased) and Mrs. Kay Walker Southern. In the early 1980s, the children's grandparents sought to give a large amount of money to the plaintiffs. The two adult grandchildren, Brent and Susan Southern, established trusts. Brent and Susan were each the settlor and income beneficiary of his or her respective trust. Ouachita National Bank, a predecessor of Bank One, was named as trustee. Chris and Amy Southern were still minors. *777 Money was donated to them under the Uniform Gifts to Minors Act. Their mother, Kay Southern, was designated as custodian of the gifts, and managing agency agreements on behalf of the minors were established with Ouachita National Bank (ONB). Dr. and Mrs. Southern, with several other persons, borrowed a large sum of money from the commercial division of ONB. The Southerns were not able to repay their portion of the commercial loan. In order to satisfy the Southerns' obligation, it was determined that loans would be made to them from the children's funds. William C. Staab, head of the trust department, called a meeting of the Southerns and their children. The children were advised that the loans to their parents were necessary to prevent the loss of the family home. On May 11, 1983, loans were made to the Southerns in the amount of $87,500.00 from Brent's trust and $75,000.00 from Susan's trust. On that same date, Mrs. Southern, in her capacity as custodian for the funds owned by Amy and Chris, loaned to herself and her husband $93,500.00 from Chris's account and $93,500.00 from Amy's account. The total amount of money lent to the parents was $350,000.00. All four loans were interest free and secured by a mortgage on the family home.
In 1990, ONB's successor, Premier Bank, resigned as trustee of Brent's and Susan's trusts and they each took control of their accounts. The notes evidencing the loans to their parents were transferred to them. In late 1991, all four plaintiffs executed a dation en paiment whereby they received a fractional ownership interest in the family home in exchange for extinguishing the notes and mortgage given to secure the loans made in 1983. At this time, Amy and Chris were no longer minors.
On July 31, 1996, the plaintiffs filed suit against Bank One (Bank), the successor to Premier, seeking to recover damages for fraud and wrongful conduct. The suit essentially alleged that the Bank acted wrongfully in inducing the children to lend the large sum of money to their parents to satisfy the parents' obligation to the Bank. They complained that demand for repayment of the commercial loan was made only on the Southerns and not upon the other parties to the loan. They also alleged that the transaction violated the duty of the Bank to keep the commercial and trust departments separate. Also named as defendants were several Bank officers involved in the 1983 loan. The plaintiffs sought to recover against the officers in their individual capacities. The individuals named as defendants were Robert L. Vanderpool, Jr., president and CEO of the Bank at that time; William C. Staab, head of the trust department; and John C. Blackman, an attorney who advised the trust department. They alleged that Vanderpool, Staab and Blackman violated their duty to keep the commercial and trust departments separate and conspired with Hudson, Potts and Bernstein, the law firm representing the trust department, to cause a loss to the plaintiffs and an unjust advantage to the Bank. They alleged that the Bank had numerous conflicts of interest with the interests of the children and that the Bank violated its own policy against resorting to the trust funds of borrowers' children to pay loans of their parents. They also alleged that the Bank deprived the children of having their own legal counsel to advise them regarding the transaction.
The defendants filed exceptions of vagueness and no right and no cause of action. The plaintiffs filed first and second supplemental petitions. The defendants then filed an exception of prescription, claiming that the plaintiffs had not alleged any contractual relationship with the defendants, therefore, their cause of action is in tort and subject to the one year prescriptive period of La. C.C. art. 3492. The defendants contend that the loans were made in 1983 and the terms of the transaction were fully disclosed to the plaintiffs at that time. The defendants *778 also point out that the terms of the loan were again fully set forth in the dation en paiment which was executed in late 1991, and by that time, all the plaintiffs knew or should have known every fact known to them on the date they filed suit. In addition, all the plaintiffs were adults at that time. The plaintiffs did not bring this action until July 1996.
A hearing was held on the exceptions of prescription and no right and no cause of action on March 9, 1998. Numerous exhibits were introduced and the plaintiffs presented the testimony of Brent Southern concerning the events leading up to the filing of this action.
On July 30, 1998, the trial court filed reasons for granting the exception of prescription and the exception of no right of action as to the individual defendants in their individual capacities. The court found that no new facts or relevant information forming the basis of this suit came to the attention of the Southern children after December 1991. The court noted that suit was not filed until July 31, 1996. The court also found that the doctrine of contra non valentem did not apply. The court determined that the plaintiffs were aware of the facts constituting their cause of action by December 31, 1991, or the facts were reasonably knowable by that date. The court also found that the plaintiffs failed to demonstrate a right of action against the individual defendants in their individual capacities and therefore, the exception of no right of action was granted. A judgment granting the exceptions and dismissing the suit at the plaintiffs' cost was filed by the trial court on September 9, 1996. The plaintiffs appealed the trial court judgment.

PRESCRIPTION
On appeal, the plaintiffs object to the trial court's action in granting the exception of prescription.[1] The plaintiffs contend that this case involves the fraudulent breach of a fiduciary duty. The plaintiffs argue that the trial court erred in characterizing their case as a claim that the Bank wrongfully advised the plaintiffs to make a loan to their parents. According to the plaintiffs, the trust funds were owned by the Bank in trust and funds from fiduciary accounts were illegally withdrawn and used to benefit the Bank. The plaintiffs also assert that the Bank knew it was improper for the parents to use the minors' funds in the managing agency agreements to pay the parents' debt at the Bank.
The plaintiffs further argue that the fraud and concealment were continuing. They assert that from 1983 to the time this lawsuit was filed, their mother had a continuing line of credit with the Bank, secured by a first mortgage on the family home. The law firm that represented the trust department of the Bank also represented their mother. They contend that the Bank sought to "bury" the loan transaction by having the dation en paiment executed. According to the plaintiffs, in 1989 their mother executed a dation en paiment transferring an interest in the family home to the Bank as trustee for the children. The Bank sought to resolve the conflict of interest it had in continuing to hold a mortgage on the house in favor of the commercial department by releasing that mortgage on the children's interest in the house. In 1991, a new dation en paiment was executed to the children, after they all became adults. The plaintiffs argue that the 1991 dation is a fraud and point to the fact that none of the releases or dations were filed into the public record. According to the plaintiffs, this shows that the Bank acted fraudulently throughout its dealings with them.
*779 The plaintiffs contend that the doctrine of contra non valentem agere nulla currit praescriptio applies to this case to stop the running of prescription. They contend that the Bank effectually prevented them from asserting their cause of action and that the cause of action was not known or reasonably knowable until they hired their present counsel.

Applicable Prescriptive Period
To determine whether the trial court correctly granted the exception of prescription first requires an analysis of the nature of this action. That is, we must examine whether the plaintiffs urge a cause of action in tort or whether they seek redress for a breach of trust under the Louisiana Trust Code contained in La. R.S. 9:1721, et seq. The trial court found that the prescriptive period for torts applied to this case, but that, even if the prescriptive period for trusts were applicable, the plaintiffs' claims had prescribed. We find no error in the trial court's analysis. In their original petition, the plaintiffs contended that the defendants caused damage through fraud and wrongful conduct. These allegations are generally thought of as sounding in tort. The prescriptive period for a tort, one year, is set forth in La. C.C. Art. 3492, which provides in pertinent part:
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained....
In addition, in the trial court, the plaintiffs apparently argued against the application of the Trust Code provisions to defeat an exception of improper venue by the defendants. The defendants filed an exception of improper venue, asserting that if this was a cause of action governed by the Louisiana Trust Code, because Bank One, the trustee, is a defendant, the proper venue, under La. R.S. 9:1725(5), would be in East Baton Rouge Parish, where the Bank is domiciled, rather than in Ouachita Parish.
The Bank contends that the plaintiffs argued in the trial court that they were not asserting a cause of action under the Trust Code. As noted by the Bank, the plaintiffs' opposition to the exception of improper venue does not appear in the record. However, the plaintiffs have not disputed the Bank's contention that they argued against application of the Trust Code. Based upon the record before us, the only issue raised by the exception of improper venue is whether this was a case governed by the Louisiana Trust Code against a trustee, domiciled in Baton Rouge. The exception of improper venue was denied by the trial court, maintaining the action in Ouachita Parish. Therefore, we must conclude that the trial court rejected the Bank's argument that the Louisiana Trust Code applies to this case.
We also note that not all the plaintiffs' funds were held in trust by the Bank at the time the operative facts occurred. The facts giving rise to the plaintiffs' cause of action occurred in 1983 when loans were made to the plaintiffs' parents. At that time, only Brent and Susan Southern had trust accounts with the Bank which were used for the loans in question. The funds owned by Chris and Amy Southern were not in trusts, but were in managing agency agreements, with their mother, Kay Southern, having exclusive control over the funds. Because the plaintiffs allege a cause of action in tort and because not all the funds involved in the loan were in trust accounts, we find no error in the trial court's determination that the prescriptive period for torts is applicable in this case.
However, on appeal, the plaintiffs couch their complaints as breaches of fiduciary duty owed under the Louisiana Trust Code. At the time of trial, La. R.S. 9:2234 of the Louisiana Trust Code, provided as follows:
An action by a beneficiary against a trustee is prescribed by one year, to begin from the day the trustee renders his final account to the beneficiary. If a *780 beneficiary is a minor when a trustee's final account is rendered, the prescriptive period of one year begins to run from the day he reaches the age of eighteen years.
We note that La. R.S. 9:2234 was amended by Acts 1999, No. 966, and the amendment is retroactive. The amended statute provides a two-year/three-year peremptive period for an action for damages by a beneficiary against a trustee, commencing with delivery of the accounting for the period in which the alleged act, omission or breach of duty arising out of the matters disclosed therein occurred. However, because we find that this case is governed by the prescriptive period for torts and not La. R.S. 9:2234, the amendment in no way affects the outcome of this case.

Continuing Fraud and Concealment
The plaintiffs argue that the trial court erred in failing to recognize that through the 1983 loan transaction the Bank obtained an unfair advantage in collecting loans made to Dr. and Mrs. Southern and that the fraud was actively continuing at the time this suit was filed. The plaintiffs contend that the Bank acted fraudulently in accepting a dation en paiment from Mrs. Southern in 1989 regarding the house and then having another dation executed in favor of the children in 1991. The plaintiffs also allege that, because these documents were not filed into the public record, they represent continuing fraudulent behavior.
As cited by the plaintiffs, La. C.C. art. 1953 defines fraud as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
It does not appear that the dations were concealed from the plaintiffs or that the failure to file the documents into the public record had any effect as to them. Further, we do not find that the actions outlined by the plaintiffs constituted a continuing tort which would bar the running of prescription in this matter. The principle of a continuing tort applies only when continuous conduct causes continuing damages. First National Bank, Bienville Parish v. Smith, 29,350 (La.App.2d Cir.4/2/97), 691 So.2d 355.
In this case, there is no showing of a "continuing tort." The damages complained of arose from a loan transaction in 1983. The plaintiffs were aware of the circumstances and conditions of the loan at the time. Also, the plaintiffs were aware of the dations, particularly the one executed in 1991 from their mother, conveying a proportional interest in the family home to them. There is no showing that the plaintiffs were unaware of the relevant facts or that the Bank engaged in continuous tortious conduct with continuing damages regarding the plaintiffs. The record fails to support the plaintiffs' argument regarding continuing fraud.

Contra Non Valentem
The plaintiffs contend that the doctrine of contra non valentem is applicable to this case to stop the running of prescription. The plaintiffs claim that they knew nothing about the Bank's actions until they hired their own counsel. They claim that only through their independent counsel were they able to learn of the Bank's conflicts of interest, breach of bank policy, violation of banking regulatory law, fraud and breach of fiduciary duty practiced and concealed up to that time. The plaintiffs allege that the Bank, as a fiduciary, failed to disclose material information and therefore, prescription did not begin to run. These arguments are without merit.
Contra non valentem is based on the theory that when the claimant is not aware of facts giving rise to his cause of action against a particular defendant, the running of prescription is suspended until the plaintiff discovers or should have discovered the facts upon which the action is *781 based. Kilpatrick v. Kilpatrick, 625 So.2d 222 (La.App. 2d Cir.1993), writ denied 93-2655 (La.1/7/94), 631 So.2d 445; Schoen v. Walling, 31,598 (La.App.2d Cir.2/24/99), 728 So.2d 982. Constructive knowledge sufficient to start the running of prescription requires more than mere apprehension that something might be wrong. Whatever is notice enough to excite attention and to put the claimant on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead, and such information or knowledge as ought to put the plaintiff on inquiry is sufficient to start the running of prescription. Kilpatrick v. Kilpatrick, supra; Tilley v. Kennedy, 605 So.2d 226 (La.App. 2d Cir.1992).
Prescription begins to run when a cause of action is known or reasonably knowable to the plaintiff. The plaintiff will be deemed to know what, by reasonable diligence, he could have learned. Kilpatrick v. Kilpatrick, supra. Prescription does not run against a person who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Prescription does not run if the cause of action has not established itself with sufficient certainty to be susceptible of proof in a court of justice, or if the defendant has concealed information or misled and lulled the plaintiff into inaction. Gulf States Land & Development, Inc. v. Ouachita National Bank in Monroe, 612 So.2d 1031 (La.App. 2d Cir.1993), writ denied 618 So.2d 406 (La.1993). However, prescription is not interrupted until the plaintiff can obtain sufficient evidence to prove the claim or to corroborate the plaintiffs account of the tort. Gulf States Land & Development, Inc. v. Ouachita National Bank in Monroe, supra.
Generally, the doctrine of contra non valentem suspends prescription where the circumstances of the case fall into one of the following categories:
1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206; Corsey v. State, Through Department of Corrections, 375 So.2d 1319 (La.1979).
The plaintiffs acknowledge that the first two categories of the doctrine of contra non valentem do not apply. In fact, the first two categories are infrequently applicable in modern times. Whitnell v. Menville, 540 So.2d 304 (La.1989). The plaintiffs assert that the third and fourth categories are applicable to this case. The plaintiffs argue that, only after they hired an attorney were they aware that the Bank deceived them as to the propriety of the loan made to their parents. The plaintiffs argue that the Bank, as trustee, had a duty to disclose the fact that the Bank was acting for its own benefit in transferring funds from the trust department to the commercial department and in telling them that the loan was necessary to benefit their parents, when in fact it was necessary to benefit the Bank. They contend that the Bank did not disclose that other parties were also responsible for payment of the commercial loan. The plaintiffs complain that they were led to believe that there was no other way to satisfy their parent's debt other than to use the children's funds. They also assert that the Bank failed to tell them that the loan transaction violated the Bank's written trust policies. They further argue that the Bank concealed the illicit nature of the *782 transaction by failing to consult the attorney who was listed in Brent and Susan's trust agreements as the children's legal counsel. They argue that bank policy and La. R.S. 9:2241 of the Louisiana Trust Code required the Bank to obtain independent legal counsel for the children. The plaintiffs contend that the Bank's silence in the face of a duty to disclose effectively prevented the Southern children from knowing about their cause of action.
We find, as did the trial court, that contra non valentem is not applicable in the present case to stop the running of prescription. The plaintiffs allege that the Bank committed improprieties in inducing them to lend money to their parents. The record shows that the plaintiffs were informed in 1983 that the loan proceeds were going to their parents and that the loan was interest free and was secured by a mortgage on the family home. It is not disputed that Dr. and Mrs. Southern were obligated on a commercial loan from the Bank that was in arrears. In 1983 when the loans were made, Brent and Susan signed indemnification agreements to hold the Bank harmless as trustee from any liability which it might incur, direct or indirect, for making the loans from the trusts. Brent Southern testified that he did not read the agreement prior to signing it. Interestingly, Mr. Southern testified that he never read documents signed at the Bank, even after he became an attorney.
The plaintiffs object that the Bank did not secure separate legal counsel for the children at the time the loans were made. The trust agreements for Brent and Susan listed an attorney for the trusts. Even though that attorney was not contacted, the record shows that Joe D. Guerriero, the family's attorney, was contacted before the loans were made. Further, the Bank took no steps to prevent the plaintiffs, particularly Brent and Susan, who were adults, from seeking legal counsel before making the loans. When the loans were made, the terms of the transaction were clearly spelled out in the loan documents. The children were informed of the amount to be lent, that the loan was to their parents, that the loans would bear no interest and were secured by a mortgage on the family home. In 1991, the notes were extinguished by proportional transfers of interest in the family home from Mrs. Southern to the children through a dation en paiment.[2] At that time, the children were again informed of all the specifics regarding the 1983 loans.
Notably, in 1991, by the time the dation to the plaintiffs was executed, Brent and Susan Southern had obtained the resignation of the Bank as trustee of their trusts used to make the loans to their parents. Further, at that time, all parties, including Amy and Chris Southern, were adults. The record demonstrates that all the facts surrounding the 1983 loans were disclosed to the plaintiffs when the loans were made and again when the dation to the plaintiffs was executed in 1991.
During Brent Southern's testimony on the exceptions, he was asked what it was that triggered the filing of the lawsuit. He pointed to no new information that was not known or reasonably knowable many years prior to the filing of this suit. Brent Southern stated that Chris and Susan Southern saw an advertisement about ongoing litigation with the Bank's trust department. They thought there was no harm in calling the attorneys and "seeing what could be done." We do not find that the plaintiffs were only able to discover that they had a cause of action after seeing an advertisement regarding the Bank's trust department. See and compare Le-Compte v. State-Department of Health and Human Resources-South Louisiana Medical Center, 97-1878 (La.App. 1st Cir. 9/25/98), 723 So.2d 474. We find that all facts regarding this suit were known or reasonably knowable at least by the time *783 the dation was signed in 1991. There is no showing that the Bank concealed matters from the plaintiffs, thus suspending the running of prescription. Therefore, the present action, which was filed approximately thirteen years after the loans were made to their parents, and approximately five years after the dation extinguishing the notes given to secure the loans, is not timely and is prescribed.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment dismissing the claims of the plaintiffs, Brent Southern, Susan Southern, Chris Southern and Amy Southern, against the defendant, Bank One of Louisiana, because those claims have prescribed. All costs in this court and in the court below are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] It should be noted that the plaintiffs have not assigned as error the granting of the exception of no right of action regarding Vanderpool, Staab, and Blackman, in their individual capacities. Therefore, that portion of the trial court judgment is not before this court for review.
[2] According to the parties, Mrs. Southern received full ownership of the family home pursuant to the divorce of Dr. and Mrs. Southern, which occurred after the 1983 loans.