540 So.2d 304 (1989)
Lorraine S. Whitnell, Wife of/and James WHITNELL
v.
Dr. John G. MENVILLE, et al.
No. 88-C-1285.
Supreme Court of Louisiana.
March 13, 1989.
*305 Russ M. Herman, Tonia D. Aiken, Herman, Herman, Katz & Cotlar, New Orleans, for applicants.
Chester A. Fleming, III, Boggs, Loehn & Rodrigue, Darryl J. Foster, Jr., Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for respondents.
CALOGERO, Justice.
Plaintiff Lorraine Whitnell and her husband filed this medical malpractice lawsuit against Dr. John G. Menville in 1986. It appears from the allegations of the petition that Dr. Menville last treated Mrs. Whitnell in 1980. Relying on La.R.S. 9:5628's provision that a medical malpractice action "shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect," the district court sustained Dr. Menville's peremptory exception of prescription and dismissed plaintiffs' claim against that defendant. The court of appeal affirmed. 525 So.2d 361 (La.App. 4th Cir.1988). We granted a writ of review, 530 So.2d 553 (La.1988), to consider plaintiffs' argument that prescription was interrupted because Dr. Menville learned in 1980 that Mrs. Whitnell was in danger of developing cancer of the bladder, but failed to disclose this information to her, either at the time of his treatment or at any time thereafter.
For reasons hereafter set forth, we agree with the lower courts that plaintiff's claim against Dr. Menville is prescribed on the face of the petition. We also find, however, that prescription could have been interrupted, if, as plaintiffs argue, Dr. Menville learned of vital information regarding the patient's health but failed to disclose that information to her. Thus, we conclude that the claim against Dr. Menville should not be dismissed without plaintiffs' *306 first having an opportunity, as provided by La.Code of Civ.Proc. art. 934, to amend their petition to allege facts which would remove the grounds for granting the exception of prescription. Therefore we reverse the judgments of the lower courts insofar as they dismissed plaintiffs' claim against Dr. Menville, and remand the case to the district court with instructions to allow the plaintiffs 30 days to amend their petition in accordance with the procedure provided by article 934.

(I) FACTS
The district court decided the peremptory exception based on its review of the pleadings and memoranda submitted by counsel. It does not appear that any testimony or written evidence was offered by any of the litigants at the hearing on the exception. Thus, in reviewing the prescription question, we are limited to the allegations of the petition.
The petition alleges that in October, 1984, Mrs. Whitnell was diagnosed as having cancer of the bladder. As a result of that condition, she received radiation treatments and underwent surgery which required the removal of her reproductive organs, appendix and bladder.
This action is brought against three physicians who treated plaintiff for bladder and urinary tract problems prior to her discovery in 1984 that she had cancer of the bladder. Those physicians are: Dr. Arthur Silverman, who treated plaintiff in 1983 and 1984; Dr. Ronald Swartz, who treated plaintiff in 1984; and Dr. Menville, who, as far as can be ascertained from the petition, last treated plaintiff in 1980.
This action was preceded by a 1985 lawsuit which plaintiffs brought against Dr. Silverman, alleging malpractice in connection with his treatment of Mrs. Whitnell's bladder condition. Dr. Menville was not named as a defendant in that suit. The 1985 suit was dismissed on an exception of prematurity, as the claim against Dr. Silverman had not been submitted to a medical review panel prior to institution of suit. After the dismissal of that suit, the claim against Dr. Silverman was submitted to a medical review panel, which in due course issued an opinion. Plaintiffs then instituted this suit (filed September 22, 1986) against Drs. Silverman, Swartz and Menville.
As regards Dr. Menville, the only defendant with whom we are concerned at this time, the petition alleges the following facts:

II.
"In May of 1980 Lorraine Whitnell was admitted by Dr. John Menville to Touro Informary for recurrent urinary tract infections. During this hospitalization Dr. Menville performed a cold punch biopsy of the bladder lesion. The Pathology report No. S-80-2592 dated May 8, 1980 gave a microscopic description which was compatible with a diagnosis which could be interpreted as carcinoma in situ of the bladder or a precancerous lesion which had a high likelihood of developing into clear cut cancer of the bladder. However, the plaintiff was not followed up with further treatment or diagnostic testing. Dr. Menville failed to recognize or communicate this information to plaintiff."
The foregoing are the only factual allegations in the petition pertaining to Dr. Menville's treatment of Mrs. Whitnell. The following assertions are made in the petition regarding the legal basis of plaintiffs' claim against this physician:

XIII.
Dr. John G. Menville was negligent and or/at fault and breached a contractual duty to petitioners which caused the injuries sustained in the following non-exclusive particulars:
(A) Failure to provide adequate and reasonable health care;
(B) Failure to timely and properly diagnose and/or determine that Lorraine Whitnell had carcinoma of the bladder;

(C) Failure to timely and properly perform the proper diagnostic tests and procedures to determine the cause of *307 severe pain and recurrent tract infections;
(D) Failure to timely and properly perform x-rays;

(E) Failure to timely and properly perform visual examinations of petitioner;

(F) Failure to timely and properly perform a cystoscopy;

(G) Failure to timely and properly prescribe appropriate diagnostic tests, studies and medication for the serious medical condition of the plaintiff;
(H) Failure to properly examine and treat plaintiff with diagnostic tests and comparisons at a point in time at which she could have been cured or at a time where the probability of cure would have been greatly enhanced;
(I) Failure to monitor patient's condition;
(J) Failure to timely consult the necessary specialist to properly treat and diagnose the petitioner's underlying medical problem;
(K) Failure to timely and properly treat the condition which resulted in a loss of life expectancy and change [sic] for survival;
(L) Failure to perform complete history and physical examinations of the patient;

(M) Failure to timely diagnose a life threatening condition, namely, cancer; and
(N) Failure to recognize or communicate the information that there was evidence of a precancerous lesion present in May of 1980.
(emphasis added)
The gist of plaintiffs' factual and legal allegations against Dr. Menville, as particularly shown by the allegations italicized above, is that when Dr. Menville treated Mrs. Whitnell in 1980, he negligently failed to discover that she had a precancerous lesion "which had a high likelihood of developing into clear cut cancer of the bladder." While plaintiffs argue in brief that Dr. Menville correctly diagnosed Mrs. Whitnell's condition but failed to disclose that diagnosis to her, no such allegation is made, directly or indirectly, in the petition. This is, at least insofar as the present allegations of the petition pertaining to Dr. Menville are concerned, a negligent misdiagnosis case. We treat it as such for the purpose of determining whether the claim is prescribed on the face of the petition.[1]

(II) ANALYSIS
La.R.S. 9:5628(A) provides in pertinent part that:
A. No action for damages for injury or death against a physician ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year of the alleged act, omission or neglect, or within one year of the date of discovery of the alleged act, omission or neglect; however even as to claims filed within one year of the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
As regards Dr. Menville, the "alleged act, omission or neglect" identified in the petition is his failure to correctly diagnose the patient's bladder condition in 1980. Under La.R.S. 9:5628(A), the allowable period for filing suit on such a claim is one year from the date of the negligent act or one year from the date plaintiff discovered the negligent act, but, "in all events ... at the latest" three years from the negligent act. As the negligent act occurred in 1980, and this suit was not brought until 1986, the claim against Dr. Menville is prescribed on the face of the petition.
Nor do we find any basis for concluding, at least from the allegations of the petition, that prescription was interrupted. Plaintiffs argue that the predecessor action in 1985 against Dr. Silverman interrupted prescription against Dr. Menville, for the *308 reason that Drs. Menville and Silverman are joint tortfeasors and suit against one joint tortfeasor interrupts prescription under La.R.S. 9:5628(A) as to any other joint tortfeasors. It is true, as we held in Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), that the prescriptive period provided by La.R.S. 9:5628 can be interrupted in this fashion, but only for conduct for which both tortfeasors are responsible, and which, as regards the defendant in the first filed suit, was not prescribed when that suit was filed. The 1985 suit against Dr. Silverman could only have been timely concerning conduct of Silverman's occurring within three years preceding institution of suit or no sooner than 1982, and there is no allegation that Dr. Menville committed a tort in 1982 or later. The claim against Dr. Menville for negligently misdiagnosing the patient in 1980 precribed, at the latest, in 1983, and presciption thus had already run with respect to that claim when Dr. Silverman was sued in 1985 for negligence on his (Silverman's) part that allegedly occurred in 1983 and 1984. See Ferguson v. Lankford, 374 So. 2d 1205 (La.1979); Juneau v. Hartford Ins. Co., 458 So.2d 1011 (La.App. 3rd Cir.), writ denied, 462 So.2d 198 (La.1984).
Plaintiffs have also argued that prescription was interrupted under the doctrine of contra non valentem agere nulla currit praescriptio (prescription does not run against a party who is unable to act). Plaintiffs allege that Mrs. Whitnell could not have known she had a cause of action against any of the three defendants until she was diagnosed with bladder cancer in 1985, that prescription thus did not begin to run in favor of any of the defendants until that time, and that the 1985 suit against Dr. Silverman (within a year of discovery) interrupted prescription against Dr. Menville.
Contra non valentem, a judicially-created doctrine, has been applied to prevent the running of prescription in four disctinct situations:
(1) where there was some legal cause which prevented the courts or their officers from taking congnizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Plaquemines Parish Commission Council v. Delta Development Co., 502 So.2d 1034 (La.1987); Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979).
Of these four categories of contra non valentem, we need not consider here the first two, which are infrequently applicable in modern times. See Corsey, 375 So.2d at 1321.
What we refer to as the third category of contra non valentem applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies ("prevention by the debtor"). Plaquemines Parish Commission Council, 502 So.2d at 1056. Although strictly speaking a misdiagnosis may have the effect of preventing or at least limiting a plaintiff's ability to discover a cause of action, we do not believe that this third category is available in a case such as this, where it is simply alleged that the physician negligently misdiagnosed the patient's condition (and no allegation is made that defendant took additional actions to conceal his negligence). A doctor who negligently misdiagnoses a patient's condition is, at least at the time of the diagnosis, as ignorant of his negligence as is the potential plaintiff. Obviously, a defendant cannot be said to have concealed facts of which he had no knowledge.
The only remaining category of contra non valentem, and the one which would normally be available in a case involving a negligent misdiagnosis, applies when the cause of action is not known or reasonably knowable by the plaintiff, though the plaintiff's ignorance is not induced by the defendant. *309 Prior to the enactment of La.R.S. 9:5628, this fourth category of contra non valentem, sometimes referred to as the "discovery rule," was commonly utilized in medical malpractice cases. The general rule was that the plaintiff had one year to file suit from the date on which he discovered or should have discovered the grounds for his cause of action. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La. 1986). However, as we noted in Hebert, La.R.S. 9:5628 was intended to restrict the application of the "discovery rule," or fourth category of contra non valentem, by providing that, regardless of the date of discovery, a claim must be filed at the latest within three years of the alleged act, omission or neglect. Id. at 721-25. See also Chaney v. State Department of Health & Human Resources, 432 So.2d 256 (La.1983).
As this suit was filed more than three years after the date of the alleged negligent act, it is barred by La.R.S. 9:5628 and the discovery rule embodied in the fourth category of contra non valentem does not save plaintiffs' claim from prescription. Nor, as we have noted, do any of the other three categories of contra non valentem apply to the present claim for negligent misdiagnosis.
Thus we agree with the lower courts that the claim against Dr. Menville is prescribed on the face of the petition, and that there are no grounds for finding that prescription on the claim set forth in the petition has been interrupted. However, this conclusion does not, in our view, require dismissal of the lawsuit. La. Code of Civ.Proc. art. 934 provides as follows:
Art. 934 Effect of sustaining peremptory exception
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
This article has been liberally applied in cases involving prescription. In numerous cases our courts of appeal have held that where the plaintiff has raised allegations in argument which might be sufficient to overcome a peremptory exception of prescription, he should be allowed time to amend his petition to assert such allegations, even though the claim asserted in the original petition is prescribed on its face. See, e.g., Craig v. Housing Authority of New Orleans, 482 So.2d 148 (La.App. 4th Cir.1986); Royal v. Schwartz, 433 So.2d 390 (La.App. 4th Cir.1983); Smith v. Cupples Real Estate, Inc., 412 So.2d 682 (La. App. 2nd Cir.1982), Pellerin v. Cashway Pharmacy of Franklin, 396 So.2d 371 (La. App. 1st Cir.1981); Wright v. Aetna Life & Casualty Co., 360 So.2d 235 (La.App. 1st Cir.1978); Arrow Construction Co. v. Newsom's Demolishing Co., 357 So.2d 95 (La.App. 4th Cir.1978), writ denied, 359 So. 2d 196 (La.1978), H & H Boat Rental, Inc. v. Vidos, 225 So.2d 308 (La.App. 1st Cir. 1969). This rule recognizes this state's liberal approach toward allowing amended pleadings, and promotes the interests of justice. Smith v. Cupples Real Estate, Inc., 412 So.2d at 684; Arrow Construction Co. v. Newsom's Demolishing Co., 357 So.2d at 96.
While it is not necessary to allow plaintiff time to amend if he cannot even point out possible grounds sufficient to overcome the exception, Kerr v. Jefferson Truck Lines, 389 So.2d 729 (La.App. 4th Cir.1980), writ denied, 396 So.2d 1351 (La. 1981), a court may allow time to amend if the new allegations raise the possibility that the claim is not prescribed, even if the ultimate outcome of the prescription issue, once the petition is amended, is uncertain. H & H Boat Rental, Inc. v. Vidos, 225 So.2d at 310-11; Craig v. Housing Authority of New Orleans, 482 So.2d at 149. In other words, unless it can be determined in advance of the amendment that the new allegations could have no effect on the prescription issue, opportunity to amend should be allowed. See Drane v. City of New Orleans, 328 So.2d 752, 754 n. 2 (La. App. 4th Cir.1976) (Lemmon, J.).
*310 In this case, plaintiffs argue, apparently as an alternative to the negligent misdiagnosis theory of recovery asserted in the petition, that Dr. Menville correctly diagnosed Mrs. Whitnell in 1980, realized that she was in danger of bladder cancer, and failed to disclose this information to her. Plaintiffs further argue that by not disclosing to Mrs. Whitnell this material information regarding her health, he violated a fiduciary duty to her, and is liable for damages to the extent that his nondisclosure prevented her from timely discovering her bladder condition and seeking preventive treatment for the same. The validity of similar causes of action based upon nondisclosure of a diagnosis by a physician has been recognized by the jurisprudence. See Dowling v. Mutual Life Insurance Co. of New York, 168 So.2d 107 (La.App. 4th Cir. 1964), writ denied, 247 La. 248, 170 So.2d 508 (La.1965).
Plaintiffs should be allowed to amend their petition in order to assert this claim because, depending on the resolution of certain factual and legal issues, it might not be prescribed. If Dr. Menville withheld information from the patient regarding her physical condition, his act of doing so, while in itself a tort, might also serve to trigger the third category of contra non valentem (prevention by the debtor). See Corsey v. State Department of Corrections, 375 So. 2d 1319 (La.1979) (tortious act was also act which triggered application of third category of contra non valentem).
We have not yet resolved whether La. R.S. 9:5628 prevents the filing of the suit more than three years from the negligent act when the third category of contra non valentem (prevention by debtor) is applicable, although our opinion in Gover v. Bridges, 497 So.2d 1364 (La.1986) implied that it does not. There we considered whether a doctor had made misrepresentations to his patient which interrupted prescription and permitted the institution of a medical malpractice action after the expiration of the three year period set forth in R.S. 9:5628. Finding from the facts of that case that no such misrepresentation had been made, we did not definitively resolve the question of whether the third category of contra non valentem was restricted by the three year rule provided by the statute. One court of appeal decision, however, has reached the conclusion that the statute's three year period does not apply when the grounds for applying the third category of contra non valentem exist. Harvey v. Davis, 432 So.2d 1203 (La.App. 4th Cir. 1983). See also Note, Gover v. Bridges: PrescriptionApplicability of Contra Non Valentem Doctrine to Medical Malpractice Actions, 61 Tul.L.Rev. 1541 (1987) (discussing reasons why the three year rule may not apply to cases in which the third category of contra non valentem is applicable).
We need not resolve this issue here, on less than a complete record and in a case where the specific factual allegations which might trigger the application of the third contra non valentem category have not yet been made. We simply hold that plaintiffs, having raised a colorable argument that certain facts exist which are sufficient to interrupt prescription and to overcome the grounds for the peremptory exception, should be given an opportunity to amend their petition to allege those facts.
If plaintiffs fail to amend their petition, then their claim should be dismissed. La. Code Civ.Proc. art. 934. If plaintiffs amend their petition and allege new facts, then the district court should consider anew the exception of prescription. At any evidentiary hearing on the exception the plaintiffs will have the burden of proving the grounds for any interruption of prescription which they allege in their amended pleading. Sun Oil Co. v. Tarver, 219 La. 103, 52 So.2d 437 (1951).
In light of our holding, we pretermit consideration of plaintiffs' argument that La.R.S. 9:5628 is unconstitutional. In the event that the issue of the statute's constitutionality is reached at a later stage of this proceeding, however, we offer the following guidance to the district court and the parties regarding the disposition of plaintiffs' argument that the statute violates equal protection guarantees contained *311 within art. 1, § 3 of the Louisiana constitution.
In Crier v. Whitecloud, 496 So.2d 305 (La.1986), a plurality opinion rejected the argument raised by the plaintiff in that case that La.R.S. 9:5628 violates the equal protection provisions of art. 1, § 3. The plurality held that "the statute should be upheld [against an equal protection challenge] unless plaintiff shows that it does not further an appropriate state interest." 496 So.2d at 311 (emphasis added). Because "plaintiff offered no evidence to meet this burden," id., the plurality rejected the equal protection challenge. However, Crier does not forbid future plaintiffs from offering evidence in an attempt to prove that the statute violates equal protection because it does not suitably further any appropriate state interest.[2] Thus, if the trial court determines on remand that plaintiffs' claim is presribed, even as amended, and plaintiffs desire to pursue their argument that the statute is unconstitutional, they are entitled to present evidence in support of their equal protection challenge, in accordance with the evidentiary guidelines provided for such challenges by Crier (and earlier explained in Sibley v. Board of Supervisors, 477 So.2d 1094 (La. 1985)).[3]

Decree
The judgment of the court of appeal affirming the district court's dismissal of plaintiffs' claim against defendant Menville is reversed. The case is remanded to the district court, which is instructed to allow the plaintiffs thirty days to amend their petition pursuant to the procedure provided by La.Code of Civ.Proc. art. 934.
REVERSED AND REMANDED.
LEMMON, J., joins in the opinion and assigns additional reasons.
WATSON, J., joins in the opinion and also adopts the additional reasons assigned by LEMMON, J.
MARCUS, J., dissents and assigns reasons.
LEMMON, Justice, concurring.
La.R.S. 9:5628 A is a statute which provides both prescriptive and peremptive periods. See La.C.C. art. 3447 and 3458; Crier v. Whitecloud, 496 So.2d 305 (La.1986) (Lemmon, J., concurring). The prescriptive period is one year, reckoning either from the date of the act, omission or neglect or from the date of discovery of the act, omission or neglect. The peremptive period is three years, reckoning from the date of the act, omission or neglect.
Neither the prescriptive nor the peremptive period applies in this case, at least on the record at this stage of the proceeding.
Continuing Omission by the Doctor
For pleading purposes, the petition adequately alleged that Dr. Menville knew or should have known that plaintiff had a precancerous lesion with a high likelihood of development into bladder cancer and failed to communicate this information to her.
For prescription purposes, a doctor has a duty to communicate to his patient any information contained in a biopsy report which may bear significantly on the patient's future health and care. This is a *312 continuing duty which applies not only on the day the doctor first receives the report, but on every day, hour and minute thereafter until the communication is made (or perhaps until the patient discovers the information from another source).[1] Likewise, a breach of this duty occurs continuously and constitutes a continuous "omission" under La.R.S. 9:5628 which dates back to the date the duty first arose.
Under the circumstances alleged in this case (if proved at trial), neither the prescriptive nor peremptive periods commenced to run as long as the doctor continuously omitted to perform his continuing duty to communicate the information to his patient. This continuing omission extended the commencement of the prescriptive and peremptive periods until the date the continuing omission ceased in 1986.[2]
Contra Non Valentem
As the majority notes, this court has never decided whether the third category of contra non valentem, as described in Corsey, applies in medical malpractice cases. I believe it does.
La.R.S. 9:5628 A was intended to limit the period of applicability of the discovery rule, which is itself recognized in the statute. I do not believe the Legislature intended to impose a peremptive period in cases in which the alleged debtor (here the doctor) withheld from the creditor (here the plaintiff) the only information on which the plaintiff could state a cause of action against the doctor. There is a vast difference between the debtor's affirmative withholding of information known only to that party (Category 3) and the creditor's lack of reasonable knowledge of information unknown to either party (Category 4the discovery rule).
In the present case traditional notions of fairness and substantial justice dictate that the doctor cannot avail himself of a defense based on the plaintiff's lack of knowledge of information which the doctor (the only party with that knowledge) affirmatively withheld from the plaintiff.
MARCUS, Justice (dissenting).
I do not believe that the grounds of the objection (the claim was filed more than three years from the date of the alleged act, omission or neglect) pleaded by the exception of prescription in this case can be removed by an amendment to the petition alleging the failure of Dr. Menville to disclose plaintiff's bladder condition. Accordingly, I respectfully dissent.
NOTES
[1] The allegation of paragraph XIII(N) of the petition that Dr. Menville failed to "recognize or communicate" evidence that there was a precancerous condition, when read in context with the other allegations of that paragraph, suggests that Dr. Menville did not "communicate" the information because he did not discover it.
[2] In Crier, the plurality opinion, signed by three justices, did not express a view as to whether future plaintiffs could attempt to challenge the statute on equal protection grounds by presenting evidence to show that the statute does not further any appropriate state interest. However, in separate opinions, three other justices expressed the view that the plurality opinion did not prohibit the bringing of such a challenge in future cases. See 496 So.2d at 313 (Lemmon, J., concurring); id. (Calogero, J., concurring in part and dissenting in part); id. at 314 (Dennis, J., dissenting). The remaining justice presumably would have allowed such a future challenge, as he dissented on the ground that the statute is unconstitutional on its face. Id. at 313 (Dixon, J., dissenting).
[3] The plaintiff in Williams v. Kushner, 524 So.2d 191 (La.App. 4th Cir.1988), writ granted, 526 So.2d 785 (La.1988) apparently followed Sibley procedures in challenging the constitutionality of La.R.S. 40:1299.39's limitation of the damage award available in actions against qualified health care providers, and that case is now pending in this Court after briefing and oral argument.
[1] Because the exception was tried on the pleadings and arguments and the petition adequately alleges the doctor knew the information contained in the pathology report, it is not necessary to decide at this point if the theory of continuing omission applies when the doctor should have known of the condition under the circumstances, but did not have actual knowledge. Perhaps the issue should be decided at trial as a jury question whether a doctor who disclaims actual knowledge, but was furnished a biopsy report which imparted such information that a reasonable physician would know of the condition, had sufficient knowledge to give rise to the duty to communicate the information.
[2] Here, prescription and peremption arguably might have begun to run when plaintiff learned the information as to her current condition from another source. However, plaintiff did not learn until 1986 that a pathology report had been furnished to the doctor in 1980, and the doctor continued until 1986 (according to the arguments) to omit disclosing to the patient information about her 1980 condition that had been in his possession since the date of the report. The biopsy report was finally discovered in the action against Dr. Silverman. Only at that time did the continuing omission cease.