| j CARAWAY, J.
We granted supervisory writs to review the trial court’s denial of the defendant-physician’s exception of prescription. Af *723 ter a mammogram was taken in 1992 revealing the need to biopsy a lump in plaintiffs breast, the defendant did not relate the need for the biopsy to plaintiff. Later, after more than three years passed with no further treatment by the doctor, plaintiff was diagnosed with breast cancer and filed this action in 1997. The trial court found the continuing tort doctrine applicable to this case and denied the exception. For the following reasons, we reverse and dismiss the suit.

Facts

In this medical malpractice case, plaintiff, Edna Jo Jenkins (“Jenkins”), asserts that her obstetrician/gynecologist, Dr. Jerry C. Dyess (“Dr. Dyess”), failed to timely diagnose, a breast malignancy. Jenkins was diagnosed in 1997 with metastatic breast cancer. She asserts that Dr. Dyess failed to provide, her with the results of a 1992 mammogram taken after she observed a suspicious mass in her breast.
Jenkins first sought medical attention from Dr. Dyess at his Caddo Parish clinic in November 1988. She had a routine medical examination and obtained a pregnancy test. Jenkins also saw Dr. Dyess in February 1989, June 1990, and June 1991 for routine examinations. Jenkins missed two scheduled appointments in March and April of 1992.
In mid-1992, Jenkins decided to have a small lump in her left breast medically evaluated. Apparently, the pea-sized lump had been present since Rthe late 1980’s. In her deposition, Jenkins stated that she spoke to another unidentified doctor, instead of Dr. Dyess, and decided to have a mammogram. Jenkins had the mammogram performed in Ruston at Lincoln General Hospital on August 28, 1992. The Ruston radiologist, Dr. Robert Francis, did not give Jenkins the test results, but sent the results to Dr. Dyess at Jenkins’s request. Dr. Francis’s report includes a section titled “impression” and reads:
Palpable mass on the left side with asso-dated suspicious microcalcifications. Consideration for biopsy recommended.
The radiologist’s report has a handwritten notation stating that the “results called to Dr. Dyess’ nurse.”
Dr. Francis confirmed in his deposition that he called Dr. Dyess’s office with the results. However, Dr. Francis did not recall the details of the phone call. A phone record indicates that Dr. Francis called Dr. Dyess’s office on August 28, 1992, the date of Jenkins’s mammogram. Dr. Francis also confirmed that Lincoln General Hospital had the policy of mailing a copy of the x-ray report to the requesting physician.
Jenkins’s deposition testimony reveals that she “had. no idea” whether Dr. Dyess received Dr. Francis’s report. Jenkins saw Dr. Dyess on September 14, 1992 and told him about the lump in her breast. Dr. Dyess’s physician’s notes for September 14 reflect that he examined the lump in Jenkins’s breast.
When deposed about the September examination, Dr. Dyess stated that he did not have a copy of Jenkins’s mammogram report at the time, nor did he ever receive the mammogram or Dr. Francis’s report thereafter. ^Furthermore, Dr. Dyess testified that no one in his office informed him of the results, nor did any of his employees remember receiving a call about the test results. Dr. Dyess’s notes of the September 14 examination state “check results of mammogram, check every month, and return to clinic PRN.” Dr. Dyess claims that he is “pretty sure that [he] probably told her to cheek the results of the mammogram or check with her doctor, whoever had ordered the mammogram.” Finally, Dr. Dyess admitted in his deposition that had he viewed the mammogram *724 in 1992, he would have agreed with Dr. Francis’s recommendation for a biopsy.
Dr. Dyess did not contact Jenkins after the September 1992 visit, nor did Jenkins return to see Dr. Dyess until April 16, 1997. During the April 16 visit, Dr. Dyess noticed that the lump in Jenkins’s breast had grown; therefore, Dr. Dyess referred Jenkins to a surgeon. Ultimately, the lump in Jenkins’s breast proved to be cancerous.
On July 8, 1997, Jenkins filed a formal request to empanel a medical review panel with the Patient’s Compensation Fund. A panel was convened but failed to render an opinion. According to Jenkins, the panel automatically dissolved on April 21, 2000. Jenkins then filed this suit against Dr. Dyess and his insurer, LAMMICO, on May 4, 2000. .
Dr. Dyess filed an exception of prescription in the trial court on September 16, 1999, which the trial court denied on May 3, 2000, with written reasons. The court ruled:
Physicians have a duty to discover, disclose, diagnose and treat illness, establish a follow-up plan for patients, and to follow up on records. The Court finds that there was a continuing duty owed to the plaintiff to disclose the results, treat the illness, Rfollow up on records, or follow up with the patient and that there was a continuing inaction on the part of the defendant until April of 1997.
Dr. Dyess filed a second exception of prescription on’ October 12, 2001, which was likewise denied as shown by the trial court’s November 19, 2001 judgment. We granted Dr. Dyess’s supervisory writ to review the propriety of the trial court’s rulings.

Discussion

The prescription statute for medical malpractice is found at La. R.S. 9:5628(A) (hereafter the “Statute”) and provides, in part:
No action for damages for injury or death against any physician, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
The discovery exception embodied in the Statute is a codification of the fourth category or discovery rule of contra non valentem applicable to cases in which the cause of action is not immediately knowable. In re Moses, 2000-2643 (La.5/25/01), 788 So.2d 1173. An overall limitation of three years is placed on cases otherwise falling within the discovery rule. Id.
Generally, the burden of proving that a suit has prescribed rests with the party pleading prescription. Cruse v. Louisiana State Univ. Medical Ctr., 34,-779 (La.App.2d Cir.6/20/01), 792 So.2d 798; Collum v. E.A. Conway Medical Ctr., 33,-528 (La.App.2d Cir.6/21/00), 763 So.2d 808, writ denied, 2000-2210 (La.10/13/00), 771 So.2d 653; Dixon v. Louisiana State Univ. Medical Ctr., 33,036 (La.App.2d Cir.1/26/00), 750 So.2d 408, writ denied, 2000-0627 (La.4/20/00), 760 So.2d 350. However, when the plaintiffs petition shows on its face that the prescriptive period has expired, the burden shifts to the plaintiff to demonstrate suspension or interruption of the prescriptive period, due to her lack of knowledge of the tortious act. In re Moses, supra; Cruse, supra; *725 Wilkes v. Carroll, 30,066 (La.App.2d Cir.12/10/97), 704 So.2d 938.
In this case, a lengthy period of no treatment by the physician elapsed between September 14, 1992, when Dr. Dyess allegedly faded to follow up on Dr. Francis’s report and the results of the mammogram, and April 1997, when he conducted his final examination of Jenkins. Therefore, we hold that Jenkins’s petition shows on its face that the alleged malpractice resulting from Dr. Dyess’s “act, omission or neglect” in 1992 has prescribed under the Statute, and Jenkins had the burden of proof at the trial of the exception of prescription to demonstrate suspension or interruption of prescription.
Jenkins urges that the trial court’s ruling is supported by the continuing tort doctrine. The continuing tort doctrine has been raised for medical malpractice involving a “continuing omission” and has recently been the topic of a decision by our supreme court. In re Moses, supra. Additionally, medical malpractice involving a diagnostic failure has been the subject of prior jurisprudence where the issue of the application of the “third category” of the doctrine of contra non valentem was raised to ^preclude the running of the three-year prescription. Whitnell v. Menville, 540 So.2d 304 (La.1989), on remand, Whitnell v. Silverman, 592 So.2d 429 (La.App. 4th Cir.1991), writ granted in part and remanded, 598 So.2d 345 (La.1992) (hereinafter collectively “Whitnell ”); In re Vaidyanathan, 98-0289 (La.App. 4th Cir.9/23/98), 719 So.2d 604, writ denied, 98-2674 (La.12/18/98), 732 So.2d 1238 and cases cited therein. Before we review those rulings, however, consideration of the plaintiffs evidence regarding the physician’s actions/inaction which allegedly suspended prescription, is most important.
From our review of Dr. Francis’s deposition, the trial court could reasonably conclude that his report and the actual mammogram x-ray film were mailed to Dr. Dyess’s clinic. Dr. Francis also reported that he discussed his report with a nurse at the clinic. Nevertheless, Jenkins did not testify that Dr. Dyess reviewed the mammogram with her during her September 14, 1992 examination, nor did she state that Dr. Dyess assured her that he had reviewed the mammogram or would obtain the mammogram and review it. Dr. Dyess denies th^t he ever reviewed the mammogram or Dr. Francis’s report. Dr. Dyess interpreted his notation in Jenkins’s medical record to, “check results of mammogram, check every month, and return to clinic PRN,” as his directives to Jenkins.
The trial court issued a written ruling denying the first exception of prescription and then, after entertaining Dr. Dyess’s second exception of prescription, the court reaffirmed its prior ruling. The trial court’s written reasons appear to determine from the circumstantial evidence that Dr. |7Pyess’s clinic received Dr. Francis’s report and the mammogram film in the mail. Nevertheless, the trial court did not decide the factual issue of whether or not Dr. Dyess reviewed the mammogram and recognized the need for a biopsy, but instead, alternatively ruled as follows:
The treating 'physician either had actual knowledge that the plaintiff had a suspicious mass in her breast or he failed to follow up on the patient’s mammogram results in 1992.
Whether it is crucial to decide this fact issue, which the trial court’s ruling avoided, depends upon the interpretation of the Statute in light of the Moses and Whitnell rulings. ■
Jenkins argues that the continuing tort doctrine should apply to Dr. Dyess who, according to Jenkins, specifically undertook a duty to “check on the mammogram results.” Jenkins asserts that “just as *726 continuous active treatment can form the first prong of the ‘continuing tort’ doctrine, so too can ‘continuous omission’ so long as there is a continuing duty for the physician to act.”
The recent case, In re Moses, supra, involved an act of malpractice where metal stitches were not removed from the plaintiff following a surgical procedure. The stitches remained undiscovered for over three years, during which time there was no continuing treatment of the plaintiff by the doctor. In a lengthy opinion, the supreme court ruled that the continuing tort doctrine does not apply in a medical malpractice setting as a defense against the three-year discovery rule of the Statute, absent continuing negligent treatment by the doctor. In reaching that result, the court rejected the contention that there is a continuing breach of duty and 1 ¡^suspension of prescription caused by the defendant’s failure to remedy the harm arising from the initial tortious conduct. The court stated that “the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfea-sor.” In re Moses, supra, citing Crump v. Sabine River Authority, 98-2326 (La.6/29/99), 737 So.2d 720, 729.
The act of omission in Moses was the doctor’s failure to remove the metal stitches. In this case, the trial court concluded that, at a minimum, Dr. Dyess and his office personnel neglected to review Dr. Francis’s report and the mammogram when the clinic received that information. The circumstantial evidence can be viewed as indicating that the material medical information was misplaced, misfiled or overlooked, and that Dr. Dyess never made a diagnosis or recommendation concerning the results of the mammogram. This likewise would be a negligent act of omission, and under the Moses ruling, the Statute’s three-year prescriptive period would not be suspended and would run from September 1992, when the omission occurred.
But what if Dr. Dyess actually reviewed the mammogram in 1992 and failed to reveal the need for a biopsy, which he now admits was mandated by the results of the mammogram?
The Whitnell rulings raised the issue of whether the so-called “third category” of contra non valentem applies in the case of medical malpractice to extend the time for the prosecution of a claim beyond the statutory three-| ayear period. The “third category” of the doctrine of contra non valentem applies to prevent the running of prescription when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies. Whitnell at 540 So.2d 304.
The leading case of the Louisiana Supreme Court summarizing the doctrine of contra non valentem is Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979). Corsey specifically involved the application of the third category of the doctrine. The Department of Corrections was accused of failing to prevent the stabbing of the plaintiff, an inmate at Angola. The state agency was also accused of failing to provide the plaintiff with adequate medical care, leaving the plaintiff mentally incapacitated for over a year, thus preventing the timely filing of suit. In ruling that prescription was suspended by the third category of the doctrine, the court noted:
It is true that the usual case in which contra non valentem was applied on this ground has involved conduct of the defendant preventing the plaintiffs pursuit of his claim — conduct separate from the wrongful conduct giving rise to the claim itself. We have not previously been con *727 fronted by a case in which the same wrongdoing that gave rise to the cause of action also made it impossible for the plaintiff to avail himself of his legal remedy because of the tort-caused mental incapacity. Nevertheless, we can discern no rational distinction which would justify us to apply contra non valentem in the former case, but not in the latter.
Id. at 1323-1324.
This observation in Corsey is also pertinent for medical malpractice claims where the failure to diagnose may not only be the cause of damages giving rise to the tort claim but also the conduct that prevents the plaintiff | infrom instituting suit. Nevertheless, the Statute expressly ties the running of its three-year prescriptive period to any medical “omission,” which can include the failure to give a proper diagnosis. This indicates that omissions which may trigger the third category of contra non valentem are likewise subject to the Statute’s overall three-year limitation.
While the Louisiana Supreme Court has never actually applied this third category to suspend the Statute’s prescription beyond three years, it gave the plaintiff in Whitnell the opportunity to return to the trial court and attempt to establish a suspension extending beyond three years for the doctor’s alleged failure to inform his patient of the diagnosis. In Whitnell, Dr. Menville performed a biopsy of a lesion in plaintiffs bladder in 1980. In her petition, plaintiff alleged that the resulting pathology report could have been interpreted as revealing a precancerous lesion. However, Dr. Menville did not follow up with further treatment or diagnostic testing. Plaintiff was later diagnosed with cancer of the bladder in 1984. At the supreme court, the plaintiff further argued, for the first time, that Dr. Menville actually made the correct diagnosis of the precancerous condition in 1980 but failed to inform her at that time. The court ruled that while plaintiffs claim for negligent misdiagnosis had prescribed, she could return to the trial court and attempt to prove the facts asserted in her new argument. The court ruled:
In this case, plaintiffs argue, apparently as an alternative to the negligent misdiagnosis theory of recovery asserted in the petition, that Dr. Menville correctly diagnosed Mrs. Whitnell in 1980, realized that she was in danger of bladder cancer, and failed to disclose this information to her. Plaintiffs further argue that by not disclosing to Mrs. Whitnell this material 111 information regarding her health, he violated a fiduciary duty to her, and is liable for damages to the extent that his nondisclosure prevented her from timely discovering her bladder condition and seeking preventive treatment for the same. The validity of similar causes of action based upon nondisclosure of a diagnosis by a physician has been recognized by the jurisprudence. (Citations omitted)
Plaintiffs should be allowed to amend their petition in order to assert this claim because, depending on the resolution of certain factual and legal issues, it might not be prescribed. If Dr. Men-ville withheld information from the patient regarding her physical condition, his act of doing so, while in itself a tort, might also serve to trigger the third category of contra non valentem (prevention by the debtor). (Citations omitted)
We have not yet resolved whether La. R.S. 9:5628 prevents the filing of the suit more than three years from the negligent act when the third category of contra non valentem (prevention by debtor) is applicable ...
Whitnell, 540 So.2d 304 at 310.
On remand, the trial court again found that Whitnell’s claim prescribed. The *728 Fourth Circuit Court of Appeal affirmed the ruling, citing expert testimony that Dr. Menville’s interpretation of the pathology report in 1980 was fair and reasonable. Whitnell, 592 So.2d 429 at 432. In denying Whitnell’s writ application concerning the issue of the application of the “third category” of contra non valentem, the supreme court added:
The trial court correctly concluded that the doctor did not prevent timely filing of plaintiffs action intentionally, fraudulently, or by ill practice.
Whitnell, 598 So.2d 345.
At the same time that the supreme court denied Whitnell’s writ concerning the issue of prescription, the court granted the plaintiffs writ and again remanded the case to the trial court for an evidentiary hearing and ruling on the constitutionality of the Statute. Thereafter, upon the third | ^appeal of the case to the supreme court, the constitutionality of the Statute was upheld. Whitnell v. Silverman, 95-0112, 95-0259 (La.12/6/96), 686 So.2d 23. This third ruling in Whitnell is significant in the present case because of Justice Lemmon’s dissent, in which he blended both the continuing tort doctrine and the third category of contra non valentem, and asserted that the three-year overall limitation of the Statute might not bar Whitnell’s claim. Justice Lemmon’s argument, which was rejected in Whitnell, is basically the same argument Jenkins urges in this case. His dissent states:
There is a vast difference between the situation in which a doctor negligently fails to learn material information about the' patient’s condition and the situation in which the doctor knows material information and breaches his or her duty to disclose the information to the patient. In the former situation, the doctor commits a single breach of duty to diagnose correctly the patient’s condition which is known neither by the doctor nor the patient, and the fourth category of contra non valentem would apply but for Section 5628. In the latter situation, the doctor, who is in a fiduciary relationship with the plaintiff, has a continuing duty to disclose the known material information, not only on the day that the doctor learns the information, but also on every day thereafter until the patient learns the information from another source. Breach of this continuing duty is analogous to a continuing tort, and a new cause of action (with a new prescriptive or peremptive period) arises each day that the doctor fails to disclose, either intentionally or negligently, the material information known by the doctor but not by the patient, and thereby effectually prevents the patient from availing himself or herself of the cause of action.
Id. at 34 (emphasis supplied).
Quoting Justice Lemmon’s dissent in Moses in its discussion of continuing omissions, the court appears to have again rejected the argument, suggesting instead that any course of conduct by the physician in which he negligently omits to take action, to diagnose, or to reveal the fact of a \ ^proper diagnosis and the material medical information underlying such diagnosis does not operate to suspend the running of the three-year prescription of the Statute. As best stated in the concurring opinion by Justice Dennis in a similar nondisclosure malpractice case, “[tjhere is nothing in the statutory formula or the extraneous elements to suggest that the legislature intended to exempt any case of ordinary negligence from the three-year overall limitation.” Rajnowski v. St. Patrick’s Hospital, 564 So.2d 671, 682 (La.1990). It is only when the physician withholds or conceals information “intentional *729 ly, fraudulently or by ill practice” that the Statute’s three-year bar does not apply.
In this case, the trial court’s ruling suggested that Dr. Dyess had actual knowledge in September 1992 that Jenkins had a suspicious mass in her breast because he had received and reviewed Dr. Francis’s report and the mammogram film. Whether or not that conclusion is reasonably supported by the circumstantial evidence is of no consequence, because there is no evidence that Dr. Dyess intentionally withheld material information about the mammogram results and Jenkins’s need for a biopsy. By Dr. Dyess’s own admission, if he had reviewed the mammogram in September 1992, he would have recommended a biopsy; thereby no issue of malpractice would have ever arisen. Therefore, if Dr. Dyess did in fact review the mammogram in September 1992, it cannot be said that his failure to diagnose or recommend a biopsy was an intentional act which prevented Jenkins from acting upon a claim that had not yet arisen and which could have been avoided by recommending a biopsy. Such inaction to reveal his 114diagnosis and recommendation for biopsy from the results of the mammogram would only amount to a negligent omission. Such an omission is expressly listed in the Statute as an event which starts the running of the three-year prescription.
Accordingly, based on the jurisprudence of our highest court interpreting the Statute, we conclude that Jenkins’s argument asserting the continuing tort doctrine must fail. Additionally, the trial court’s ruling can not be affirmed on the basis of the third category of contra non iialentem. Therefore, the overall three-year limitation of the Statute applies, Jenkins’s claim has prescribed, and her suit is dismissed. Costs of appeal are assessed to Edna Jo Jenkins.
REVERSED AND RENDERED.
BROWN, J., dissents with reasons.