STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-933

DANIEL P. MCCAULEY

VERSUS

MALCOLM STUBBS

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20170285
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

************

SYLVIA R. COOKS
JUDGE

************

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.

**AFFIRMED.**

Jonathan C. Vidrine
510 West Magnolia Street
P.O. Drawer 1019
Ville Platte, LA 70586
(337) 363-2772
COUNSEL FOR PLAINTIFF/APPELLANT:
    Daniel P. McCauley

Michael W. Adley
Judice & Adley
926 Coolidge Boulevard
P.O. Drawer 51769
Lafayette, LA 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANT/APPELLEE:
    Dr. Malcolm Stubbs

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

In August of 2004, Plaintiff, Daniel McCauley, injured his right knee in a work-related accident. Plaintiff began receiving treatment from Dr. Malcolm Stubbs in connection with his knee injury. On September 28, 2004, Dr. Stubbs performed a right knee arthroscopy and debridement of the chondromalacia of the right patella.

In early 2010, Plaintiff returned to Dr. Stubbs complaining of renewed pain in his right knee. On February 12, 2010, Dr. Stubbs performed a right knee arthroscopy with patellofemoral chondroplasty and debridement. Despite that procedure, Plaintiff continued to complain of pain in his right knee. On June 11, 2010, Dr. Stubbs performed a right knee arthroscopy with open tibial tubercle anterior medialization osteotomy and transfer.

Plaintiff still complained of continued right knee pain, and on March 20, 2013, Dr. Stubbs performed a total right knee arthroplasty. Plaintiff continued to treat with Dr. Stubbs until January of 2015. He claimed during this entire period and continuing to the present he has suffered from pain in his right knee.

On August 17, 2016, Plaintiff filed a medical malpractice claim against Dr. Stubbs. In the complaint, Plaintiff alleged Dr. Stubbs committed malpractice in connection with the osteotomy procedure performed on June 11, 2010 and in connection with the total right knee arthroplasty performed on March 20, 2013. In response to the complaint, Dr. Stubbs filed an exception of prescription, contending that Plaintiff's claim was prescribed. A hearing on the exception was held on March 1, 2017.

Plaintiff argued prescription was suspended until January of 2015, when the doctor-patient relationship was terminated. He argued prescription began to run on that date and he had one year to bring his malpractice claim from the date the

doctor-patient relationship ended or one year from when he discovered the act of malpractice as long as that discovery was made inside of the three-year prescriptive period under the rule of *contra non valentum*. Plaintiff claimed he did not discover the acts of malpractice until April 29, 2016, and thus, had one year from that date to file his claim.

Following arguments, the trial court allowed the parties additional time to submit memoranda. The trial court granted the exception of prescription, finding prescription runs from one year of the date of discovery only when the claim is brought within three years of the act of the alleged malpractice. Plaintiff did not bring the claim within three years, nor within one year after the doctor-patient relationship ended. Accordingly, the trial court granted the exception of prescription. On May 8, 2017, a final judgment granting the exception of prescription was signed by the trial court. This appeal followed, wherein Plaintiff asserts the trial court erred in granting the exception of prescription. For the following reasons, we affirm.

## ANALYSIS

This court in *Allain v. Tripple B Holding, LLC*, 13-673, p. 9-10 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278, 1285, discussed the appellate standard of review for an exception of prescription:

> Prescription is a peremptory exception which is provided for in La.Code Civ.P. art. 927. Evidence in support or contravention of the exception may be introduced if the grounds are not apparent from the petition. La.Code Civ.P. art. 931. An appellate court reviews the exception under the manifest error standard of review if evidence is introduced in support or contravention of the exception. *Dugas v. Bayou Teche Water Works*, 10-1211 (La.App. 3 Cir. 4/6/11), 61 So.3d 826. If not, the appellate court "simply determines whether the trial court's finding was legally correct." *Id*. at 830. Generally, the burden of proof lies on the party pleading the exception of prescription. *Id*. However, if it is apparent from the face of the pleadings that prescription has occurred, the burden shifts to the plaintiff to show that the action has not prescribed. *Id*.

3

In this case, evidence was introduced on the exception of prescription in the trial court. Therefore, the manifest error standard of review applies.

Louisiana Revised Statutes 9:5628 sets forth the prescriptive period for medical malpractice claims, and provides:

> A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

Essentially, a medical malpractice claim must be filed within one year from the date of the alleged malpractice, or within one year of the discovery of the malpractice. Also, Section 5628 sets forth a final three-year cut-off date for medical malpractice cases to be filed, regardless of the date of discovery of the alleged act, omission, or neglect.

The three-year prescriptive period elapsed before Plaintiff filed his medical malpractice claim against Dr. Stubbs. The alleged acts of malpractice occurred on June 11, 2010 and March 20, 2013. The claim was not filed until August 17, 2016, which is in excess of three years from the alleged acts of malpractice. Therefore, the complaint on its face is prescribed.

In his brief before this court, Plaintiff argues his continuing treatment by Dr. Stubbs until January of 2015, suspended the running of the three-year prescriptive period. This argument invokes the third category of the doctrine of *contra non valentem*, which if applicable serves to suspend the running of prescription. This third category, often referred to as the continuing treatment exception, provides the running of the prescriptive period is suspended "where the debtor himself has done

4

some act effectually to prevent the creditor from availing himself of his cause of action." *Whitnell v. Menville*, 540 So.2d 304, 308 (La.1989) (citing *Plaquemines Parish Commission Council v. Delta Dev. Co.*, 502 So.2d 1034 (La.1987); *Corsey v. State Dep't. of Corrections*, 375 So.2d 1319 (La.1979)).[1]

Plaintiff cites *Carter v. Haygood*, 04-646, p. 8 (La. 1/19/05), 892 So.2d 1261, 1269, for the proposition that "[i]n certain circumstances, a doctor's continuing professional relationship with his patient might give rise to the suspension or interruption of prescription. *Trainor v. Young*, 561 So.2d 722, 726-27 (La.App. 2nd Cir.), *writs denied*, 567 So.2d 1124, 1125 (La.1990)." As Dr. Stubbs notes in his brief, the *Carter* case stands only for the proposition that the third category of *contra non valentem*, i.e., continuing treatment, suspends prescription only when there is proof of fraud, concealment, misrepresentation or ill practice on the part of the defendant physician.

This court in *Braud v. Cenac*, 03-1696 (La.App. 3 Cir. 7/14/04), 879 So.2d 896, *writ denied*, 04-2101 (La. 11/15/04), 887 So.2d 484, addressed a similar argument raised by a plaintiff, who relied on the continuing treatment category of *contra non valentem* to avoid the running of the prescriptive period. This court engaged in the following discussion on that issue:

---

[1] The four categories of the judicially created doctrine of *contra non valentem* are:

(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;

(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;

(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Whitnell*, 540 So.2d at 308.

Categories 1 and 2 clearly have no application in this case and the Louisiana Supreme Court in *Borel v. Young*, 07-419 (La. 11/27/07), 989 So.2d 42 (on rehearing), found that Category 4, known as the discovery rule, has no application to the three-year prescriptive period of La.R.S. 9:5628.

The jurisprudential doctrine of *contra non valentem agere nulla currit praescriptio* recognizes that "in some circumstances, equity and justice require that the prescription 'be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.'" Prescription will not run against a person who is unable to act, which means unable to file suit. The *contra non valentem* doctrine contemplates four different scenarios in which a person is unable to file suit, only two of which are relevant in the instant case. One scenario, often referred to as the "discovery rule," suspends prescription where a plaintiff neither knew she had a cause of action nor could have learned of it through reasonable diligence.

Louisiana Revised Statute 9:5628 incorporates the jurisprudential discovery rule, allowing a plaintiff to file suit one year from the date she discovers, or should have discovered, that she had a cause of action, regardless of the date of the wrongful conduct giving rise to such cause of action. However, the statute provides an outside prescriptive period of three years. While jurisprudence holds that the three-year period is a prescriptive, rather than peremptive period, it places an overall time limit on the discovery rule. In other words, if suspension is based on the discovery rule type of *contra non valentem*, the three year period cannot be suspended or interrupted. Accordingly, it cannot save Ms. Braud's claim from prescription in the instant case.

The other relevant scenario that *contra non valentem* contemplates is when the defendant does something to conceal the wrongful conduct and, in effect, prevents the plaintiff from availing herself of her cause of action. The supreme court has not yet decided whether a plaintiff may invoke this category to suspend the running of the three-year prescriptive period in La.R.S. 9:5628; however, it has strongly implied that if the defendant's conduct rises to the level of fraudulent concealment, misrepresentations, or ill practices, the three-year prescriptive period can be suspended. We agree with this interpretation of La.R.S. 9:5628 and, therefore, proceed to evaluate Dr. Mayeux's conduct under this standard.

. . . .

Dr. Mayeux's failure to make a complete disclosure to her patient prolonged this patient's agony and recovery, while potentially insuring that she would be foreclosed, due to prescription, from bringing a cause of action for malpractice. Nevertheless, without qualification, our supreme court has found that a physician's reassurances to a patient that her condition will alleviate itself over time does not automatically rise to the level necessary to invoke the relevant category of *contra non valentem*; the supreme court has determined that it is necessary for a plaintiff to prove ill motive or intentional concealment on the physician's part. Ms. Braud has not presented us with this evidence. Thus, we are constrained from finding that she proved concealment and ill practices, on Dr. Mayeux's part, sufficient to suspend La.R.S. 9:5628's three-year prescriptive period.

6

*Id*. at 901-02.

Likewise, the court in *Jenkins v. Dyess*, 35,923 (La.App. 2 Cir. 6/19/02), 821 So.2d 722, *writ denied*, 02-1984 (La. 11/8/02) 828 So.2d 1118, addressed a similar situation as argued herein, where the plaintiff in that case alleged his continuing treatment by the defendant physician should have suspended the three-year prescriptive period. The court in *Jenkins* stated, "[i]t is only when the physician withholds or conceals information 'intentionally, fraudulently or by ill practice' that the Statute's three-year bar does not apply." *Id.* at 728-29.

Similarly, in *Claim of Aron*, 96-2665 (La.App. 4 Cir. 5/21/97), 695 So.2d 553, the appellate court therein also found the physician must be guilty of concealment, misrepresentation, fraud or ill practices for the continuing treatment exception of *contra non valentem* to apply. The court stated:

> Although the Louisiana Supreme Court has often failed to declare whether the third *contra non valentem* exception applies, as in *Rajnowski v. St. Patrick's Hospital*, 564 So.2d 671 (La.1990), that court has indicated that a physician's conduct must rise to the level of concealment, misrepresentation, fraud, or ill practices under this exception. *Fontenot*, *supra* at p. 6, 674 So.2d at p. 963. Assuming that the third category of *contra non valentem* does apply, there are no facts or circumstances in the record to suggest that [the defendant physician's] conduct rose to the level of concealment, misrepresentation, fraud or ill practices.

*Id.* at 556-57.

The jurisprudence establishes that, to defeat a well-founded exception of prescription, it is "necessary for a plaintiff to prove ill motive or intentional concealment on the physician's part." Without such proof the exception must be maintained.

"Generally, the burden of proof lies on the party pleading the exception of prescription." *Allain*, 128 So.3d at 1285. However, if it is apparent from the face of the pleadings that prescription has occurred, the burden shifts to the plaintiff to show that the action has not prescribed. *Id*. As noted above, the complaint filed by

7

Plaintiff on its face is prescribed. Therefore, the burden shifted to Plaintiff to prove a suspension of prescription. In this case, that requires proof that Dr. Stubbs' conduct rose to the level of concealment, misrepresentation, fraud, or ill practices.

Our review of the record shows Plaintiff did not meet his burden. There was no proof presented by Plaintiff that he was denied access to his medical records or was prevented from seeking other medical treatment. As Dr. Stubbs notes in brief, Plaintiff's progress report of January 15, 2014, suggests that a second opinion with Dr. Duval may be considered. Without the required proof of fraud, misrepresentation or intentional concealment on Dr. Stubbs' part, prescription could not be suspended, and the trial court did not err in granting the exception of prescription.

## DECREE

For the foregoing reasons, the judgment of the trial court granting the exception of prescription is affirmed. All costs of this appeal are assessed to plaintiff-appellant, Daniel McCauley.

**AFFIRMED.**